IN RE MARRIAGE OF: Margaret Elizabeth
FESSLER, Petitioner-Respondent, †

v.

Hubert Lambert FESSLER, Appellant.

Court of Appeals

*No. 87–2301. Submitted on briefs July 5, 1988.—Decided July
29, 1988.*

(Also reported in 432 N.W.2d 103.)

† Petition to review dismissed.

For the petitioner-respondent the cause was submitted on the briefs of *Lanser & Resnick,* by *Janet F. Resnick,* of Milwaukee.

For the appellant the cause was submitted on the briefs of *Cook & Franke, S.C.,* by *Robert E. Cook* and *William A. Jennaro,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

SULLIVAN, J.   Hubert L. Fessler (Hubert) appeals an order which modified the periodic payment provision of his divorce judgment. The circuit court construed the judgment as one for maintenance and therefore subject to modification. Hubert argues that the periodic payments relate to the division of estate and hence are not subject to modification.

The facts are undisputed. Hubert and Margaret E. Fessler (Margaret) were married September 11, 1954 and divorced March 2, 1982. Hubert earned a Bachelor of Science degree in Industrial Relations from Marquette University. He had been employed as a labor negotiator by Jos. Schlitz Brewing Company for over 30 years. Hubert was discharged effective September 1, 1982 because Stroh Brewing Company, which had acquired Schlitz, eliminated his position.[1] At that time, Hubert held an executive position in labor relations at a gross annual salary of $65,400. Hubert received this salary until the end of his contract, April 4, 1983. He then received a five-month severance allowance equal to his salary. It was paid in a lump sum on March 31, 1983. He received unemployment compensation commencing in September 1983. On May 1, 1984, Hubert began receiving his retirement pension of $1,611 per month in the form of an annuity from Metropolitan Life Insurance Company.

---

[1]The parties stipulated and the circuit court found that Hubert did not voluntarily leave his employment at Schlitz.

Margaret moved to revise the judgment to award her an interest in Hubert's pension. She also moved to have him found in contempt for failure to make periodic payments on and after January 1, 1983. Hubert made his last payment in December 1982. The circuit court, after a hearing, filed findings of fact and ordered Hubert to pay:

(1) from January 1, 1983 through August 1983, $1,200 per month totaling $9,600;
(2) from January 1985 through October 1987, $600 per month totaling $20,400;
(3) by assignment from his pension $600 per month from November 1, 1987 to Hubert's 65th birthday, March 1, 1994.[2]

We affirm the circuit court order for $1,200 monthly periodic payments during the term of Hubert's employment contract. We reverse the orders requiring payments during the severance pay period, the 1985–1987 payments and the $600 monthly payments by assignment from the pension because these are based on the supposition that the periodic payments were in the nature of maintenance and that Hubert could obtain employment. The record fails to present facts to support this conclusion.[3]

The relevant parts of the divorce judgment provide:

IX.   That the respondent shall make periodic payments to the petitioner in settlement of his

---

[2]Another provision of the trial court's order required Hubert to pay $30,000 into a circuit court escrow account by November 16, 1987. This order is not at issue in the appeal.

[3]The circuit court found Hubert made substantial efforts to secure employment from September 1983 through December 1984. This finding is not disputed on appeal.

obligation to support. Said payments shall be made at the rate of $1200.00 per month for a period of 144 months, said months being designated as the first month, March 1, 1982, and the last month, March 1, 1994. Further, this schedule reflects a last payment based on the 65th birthday of the respondent. These payments shall be made through the office of the Clerk of Circuit Court of Milwaukee County. Further, that said payments shall be subject to the following contingencies and only under any one of these contingencies shall the respondent not be liable for said payments or should payments be waived for a period of time, to-wit:

A. That payment of all periodic payments will cease upon the remarriage of the wife.

B. That all payments are to cease upon the death of either party.

C. If the respondent voluntarily terminates his employment prior to the petitioner's 55th birthday and goes on retirement/pension pay on a voluntary status, he shall continue to pay the petitioner $1200.00 per month until the 55th birthday of said petitioner, or said payments shall be due until July 1, 1987. The last payment of $1200.00 due June 1, 1987.

D. If the respondent is disabled, he shall pay $1200.00 per month to the petitioner pursuant to the schedule of periodic payments until his last payment is made on June 1, 1987, to reflect the 55th birthday of the petitioner. Further, that respondent shall purchase additional disability insurance outside his employer's coverage if this is necessary to protect the petitioner. Further, that said disability, if in effect after the 55th birthday of the petitioner shall terminate the obligation of said respondent for periodic payments as if he had died. However, should said disability cease and the

6

respondent become employed, respondent shall pay said periodic payments in the form of an amount of one fifth of his gross salary with a celing [sic] of $1200.00 until his retirement or 65th birthday, whichever occurs first.

E. If the respondent is terminated from his employment from [Jos.] Schlitz Brewing Co. and has no other employment, the petitioner shall receive no periodic payments until respondent is re-employed. At that time of re-employment, the petitioner shall receive $600.00 per month of respondent's gross salary to $30,000 per year, and after $30,000 of gross salary, respondent's periodic payments to petitioner shall be $1200.00 a month until respondent's retirement or 65th birthday, whichever occurs first.

X. That maintenance as and between the parties is terminated as of March 1, 1982.

The parties concede that the first four contingencies (Margaret's remarriage, death of either party, Hubert's voluntary termination and Hubert's disability) are inapplicable. The only contingency relating to the appeal is Schlitz's termination of Hubert's employment contract. The determination of three issues resolves this appeal: (1) whether the periodic payments are in the nature of maintenance, (2) whether Margaret was entitled to periodic payments while Hubert was receiving severance pay, and (3) whether the judgment imposed a duty upon Hubert to seek employment. We conclude under the terms of the judgment that the payments were not maintenance, that Margaret was not entitled to periodic payments during the severance period, and that Hubert had a limited duty to seek employment.

7

## STANDARD OF REVIEW

We construe a judgment in the same manner as other written instruments. *Wright v. Wright,* 92 Wis. 2d 246, 255, 284 N.W.2d 894, 899 (1979), *cert. denied,* 445 U.S. 951 (1980). A judgment is interpreted under the circumstances present at the time of its entry. *Id.* The parties do not argue the existence of ambiguity in the judgment and we perceive none. That the parties construe certain words in the judgment differently does not trammel our independent interpretation of the judgment. *Kreinz v. NDII Securities Corp.,* 138 Wis. 2d 204, 216, 406 N.W.2d 164, 169 (Ct. App. 1987). Since a legal issue is presented, we may interpret the judgment without deference to the conclusions of the circuit court. *Id.*

## PERIODIC PAYMENTS

Section 767.32(1), Stats., states that "a judgment which waives maintenance payments for either party shall not thereafter be revised or altered in that respect nor shall the provisions of a judgment with respect to final division of property be subject to revision or modification." A divorce judgment can only be modified, on a continuous basis, with respect to maintenance or family support payments. *See* sec. 767.32(1), Stats. *See also Dixon v. Dixon,* 107 Wis. 2d 492, 507, 319 N.W.2d 846, 853 (1982); *Thorpe v. Thorpe,* 123 Wis. 2d 424, 426, 367 N.W.2d 233, 234 (Ct. App. 1985).[4]

---

[4] A trial court may modify a property division under the narrow constraints of sec. 806.07, Stats.

Margaret argues that since the findings of fact expressly stated that the payments were in settlement of Hubert's "support" obligation, the payments were in the nature of maintenance and hence, subject to revision under sec. 767.32(1), Stats. We disagree.

The judgment unequivocally terminated maintenance effective March 1, 1982, the day before the divorce judgment was entered. Further, the trial court noted, in its findings of fact, that the parties had "considered the use of periodic payments in lieu of long-term maintenance ... and have further considered the tax consequences to the parties." Thus, after contemplating the tax consequences, the parties decided to waive maintenance payments and use periodic payments which would better serve their needs.

██ Periodic payments which are taxable under I.R.C. sec. 71 are not necessarily alimony or maintenance under Wisconsin law. *Wright,* 92 Wis. 2d at 261, 284 N.W.2d at 902. "Although the definitions and applications may overlap in many cases, they clearly are not co-extensive for all purposes and in all events." *Id.* Under the terms of the divorce judgment in this case, Hubert was to make monthly periodic payments if he remained employed. The judgment expressly stated that all maintenance payments had terminated. The parties have waived all maintenance, and therefore, under sec. 767.32(1), Stats., the judgment cannot be revised or altered. The trial court did not have continuing jurisdiction to modify the divorce judgment five and one-half years after it was entered.

## EMPLOYMENT CONTRACT AND SEVERANCE PAY

Hubert contends that the trial court erred by determining that, under the terms of the judgment, he

was required to make periodic payments during the term of his employment contract with Schlitz and the five-month severance pay period. He argues that since he was terminated by Schlitz at that time, he could not have been employed under the terms of the judgment. Hubert relies on *Compton v. Shopko Stores, Inc.,* 93 Wis. 2d 613, 287 N.W.2d 720 (1980), for support.

Compton was an executive for Shopko when he was terminated, with cause, on December 27, 1974. Upon termination, Compton received eight weeks severance pay. In the 1970s, Shopko had established an Executive Bonus Plan whereby executives employed at the close of its fiscal year, February, would receive a bonus. Compton argued that since his severance pay extended into February, he was still employed by Shopko and therefore entitled to the bonus. The supreme court concluded that Compton was not employed by Shopko during the severance pay period because he could no longer perform services for the company. *Id.* at 621, 287 N.W.2d at 724.

In the present case, the judgment stated that "[i]f the respondent is terminated from his employment from [Jos.] Schlitz Brewing Co. and has no other employment, the petitioner shall receive no periodic payments until respondent is re-employed." Schlitz discharged Hubert on September 1, 1982. However, his employment contract remained in effect until April 1983. On March 31, he received a lump sum payment representing severance pay for April to August of 1983. We conclude that Margaret was entitled to periodic payments until the end of Hubert's employment contract in March of 1983. We affirm the trial court order of $1,200 a month periodic payments.

10

However, we reverse the order as to the periodic payments during the severance pay period.

Severance pay marks the termination of employment. *See Id.* at 622–23, 287 N.W.2d at 724–25.

> Severance pay, by its very definition, means compensation due an employee, upon the severance of his employment status with the employer. ... A payment of severance pay by the employer and the acceptance of the same by the employee would, in our opinion, be the complete manifestation of the termination of the employment relationship.

*Id.* at 623, 287 N.W.2d at 725. (quoting *Republic Steel Corp. v. Maddox,* 275 Ala. 685, 689, 158 So. 2d 492, 494 (1963), *reversed on other grounds,* 379 U.S. 650 [1965]). After March 31 Hubert was no longer under an employment contract to perform services. Since severance pay is the "complete manifestation of the termination of the employment relationship," we conclude that Margaret was not entitled to periodic payments during the severance pay period.

## DUTY TO SEEK EMPLOYMENT

Hubert assails the circuit court's finding that his failure to seek employment in 1985 breached his duty to remain employed. He argues that he did not leave the work force voluntarily. He concededly made a good faith effort to secure employment in 1983 and 1984.

■

Margaret argues, and the trial court agreed, that Hubert has a duty to remain employed until his 65th birthday. A person who is subject to maintenance payments may have an ongoing duty to make a good faith effort to remain employed. *See e.g., Dennis v.*

*State,* 117 Wis. 2d 249, 255–59, 344 N.W.2d 128, 131–32 (1984); *Knutson v. Knutson,* 15 Wis. 2d 115, 118, 111 N.W.2d 905, 907 (1961). Here, Hubert was not subject to maintenance payments.

To measure Hubert's duty to seek employment in and after 1985, we look to the terms of the judgment and concomitant circumstances at the time of its entry. Hubert had no duty to make periodic payments after involuntary termination of his employment until he became reemployed. From the factual backdrop of a fifty-five year-old man whose life has been spent as an executive in labor relations representing industry, we readily infer that such reemployment must be in the same or a related field before Hubert can be ordered to resume periodic payments. It must affirmatively appear that a position in labor negotiations or a related field was available. Hubert's testimony is uncontradicted that he sent out resumes, made personal contacts, and had interviews in 1983 and 1984, all to no avail. He became discouraged when his efforts failed. We reject Margaret's suggestion that Hubert take any employment available including work in a fast food outlet or a car wash.

We conclude that before Hubert may be compelled to resume periodic payments, proof must be adduced and a finding made that a position comparable to the one he left, or in a related field, was available to him and that he refused to seek or accept it. Under the circumstances of this case, it was not enough for the trial court to find that Hubert did not seek employment in and after 1985. Because the circuit court did not find further that Hubert had opportunities to become employed, its order that periodic payments resume is without legal support.

In summary, we affirm the order for periodic payments from January through March 1983; we reverse the order for periodic payments during the severance pay period; we reverse the resumption of periodic payments commencing January 1985; we reverse the order that periodic payments from Hubert's pension commence November 1, 1987 and continue to March 1, 1994; we remand for further proceedings in accord with this opinion.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded.