Peter J. JACOBSON, Petitioner-Appellant,

v.

Mary E. JACOBSON, Respondent-Respondent.

Court of Appeals

*No. 92–1244. Submitted on briefs January 26, 1993.—Decided June 2, 1993.*

(Also reported in 502 N.W.2d 869.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jerry T. Delcore* and *Giulio Fornary* of Racine.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Jay K. Nixon* and *Claudia M. Simonson* of *Harvey & Nixon, Ltd.* of Racine.

Before Nettesheim, P.J., Brown and Anderson, JJ.

ANDERSON, J.   Peter J. Jacobson appeals from a circuit court order reinstating weekly payments to his

ex-wife of $106. He argues that the payments are maintenance payments, and because his ex-wife has remarried and the judgment did not specifically state that the payments were to continue after remarriage, the payments may be terminated by the court pursuant to sec. 767.32(3), Stats. We agree and therefore reverse.

Peter and Mary E. Jacobson were divorced on December 15, 1989. The court incorporated into the judgment a stipulation of the parties relating to child support, insurance for the children, property division, assignment of debts and maintenance. The maintenance provision required Peter to pay Mary $106 per week for seven years. At the divorce hearing Peter was questioned by his attorney:

> Q With regard to the property settlement, it is your understanding of the agreement that the Respondent will quitclaim over to you any interest she has in the homestead, is that correct?
>
> A Yes.
>
> Q In exchange for that, you will agree to an order for maintenance in the amount of $106 a week for seven years, is that correct?
>
> A Right.

Mary was later questioned by her attorney about the stipulation:

> Q And you agreed that that was—we both agreed that that was a fair order in lieu of the division of your homestead which would allow your husband, with your children, to remain in the homestead hopefully.
>
> A Yes.

In the court's oral decision, the court stated:

> With respect to the issues that relate to property, the Court has heard your stipulation orally stated on the record. I am satisfied that you both understand the agreement that you are entering and that you want the Court to approve it. I am also satisfied that it's fair and reasonable, and the Court will order it incorporated into the judgment to be entered in this matter. The division of your property, *including the temporary award of maintenance,* will be a full, final and complete division of your marital estate.

Mary remarried on October 25, 1990. Peter sought termination of the maintenance order through a postjudgment order to show cause dated January 16, 1992 based on a substantial change in circumstances—that Mary had "entered into a 'marriage-like relationship' with her fiance." At the hearing before the family court commissioner, Peter learned that Mary had remarried. The court commissioner terminated the maintenance based on the remarriage. *See* sec. 767.32(3), Stats. Mary appealed that order to the circuit court. The circuit court reversed the commissioner and reinstated the maintenance order. It reasoned that the verbal stipulation of the parties indicated that the maintenance was intended as a "section 71" payment replacing a property division, that the stipulation was part of a comprehensive financial settlement of the parties, and that there was no substantial or significant change of circumstances since the time of the divorce. Peter appeals.

██

Peter argues that unless the parties explicitly incorporate into the judgment of divorce that maintenance payments will continue after remarriage, *see*

*Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984), sec. 767.32(3), Stats., requires the termination of the maintenance payments upon his application after Mary remarries. Application of a statute to an undisputed set of facts is a question of law. *Nichols v. Nichols,* 162 Wis. 2d 96, 103, 469 N.W.2d 619, 622 (1991). The decision of whether the doctrine of estoppel set forth in *Rintelman* is applicable to the undisputed facts is also a question of law. *Id.* Accordingly, we review the issues raised here independently and without deference to the family court commissioner or the circuit court. *Id.*

Section 767.32(3), Stats., provides:

> After a final judgment requiring maintenance payments has been rendered and the payee has remarried, the court shall, on application of the payer with notice to the payee and upon proof of remarriage, vacate the order requiring such payments.

As a general rule, when the payor spouse meets the procedural requirements of this section, the court must vacate the maintenance order. *See Rintelman,* 118 Wis. 2d at 592, 348 N.W.2d at 500-01. Under the statute, the court has no discretion to allow the maintenance order to stand in full or in part. However, in *Rintelman,* our supreme court recognized that when the parties agreed by stipulation that the maintenance payments were to continue after remarriage, a payor spouse may be estopped from terminating the maintenance obligation under sec. 767.32(3). *Rintelman,* 118 Wis. 2d at 597, 348 N.W.2d at 503. Where the parties' stipulation incident to a divorce decree is a comprehensive package for the settlement of their financial

obligations, the stipulation will constitute an estoppel if both parties entered into the stipulation freely and knowingly, the overall settlement is fair and equitable and not illegal or against public policy, and one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement. *Id.* at 596, 348 N.W.2d at 502-03.

Here, as in *Rintelman,* the parties' stipulation which was incorporated into the judgment of divorce stated that maintenance would extend for a designated period of time—payments in *Rintelman* lasted for the lifetime of the payee; here the duration was for seven years. Also like *Rintelman,* the stipulation did not address whether maintenance would end upon the payee's remarriage. Significantly, the two cases differ in that the judge in *Rintelman* asked the payor at the divorce hearing whether payments were to continue after remarriage of the payee. The payor responded affirmatively. Peter's colloquy with the judge made no mention of the possibility of Mary's remarriage and its affect on the maintenance payments.

By not stating on the record that the parties' intentions were to continue maintenance beyond remarriage, there was a failure to meet the final estoppel requirement of *Rintelman*: that one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement. Because the court did not order maintenance payments to continue after remarriage, Peter is not asking that the court relieve him from that provision of the order. He is instead asking for relief from the portion of the order which directed payments to continue

for seven years. The court had the power to enter on its own that portion of the order, whether or not the parties agreed to it. Therefore, estoppel does not apply and Peter is entitled to relief under sec. 767.32(3), Stats. *See Fobes v. Fobes,* 124 Wis. 2d 72, 80, 368 N.W.2d 643, 646 (1985).

The circuit court's holding that Peter was not entitled to terminate his maintenance payments was apparently based on its view that the payments were actually a deferred property division, payable over time.[1] Because sec. 767.32(3), Stats., only allows a party to terminate "maintenance" upon the payee spouse's remarriage, and sec. 767.32(1) does not allow a final division of property to be modified or revised, the court held that Peter would not be relieved of the weekly payments to Mary.

A court interprets a judgment in the same manner as other written instruments. *Fessler v. Fessler,* 147 Wis. 2d 1, 8, 432 N.W.2d 103, 106 (Ct. App. 1988). A

---

[1] The circuit court stated that "the payments were intended by the parties [to] replace property division in the nature of section 71 payments." We agree with Peter that the court mislabeled the payments as "section 71 payments." Evidently the court was referring to periodic payments under prior provisions of the federal tax code which were allowed to be treated as taxable to the payee and deductible to the payor. *See* I.R.C. § 71 (a) & (c) (1984). This characterization for federal tax purposes had no effect on the payments' characterization under state law. *See Fessler v. Fessler,* 147 Wis. 2d 1, 9, 432 N.W.2d 103, 107 (Ct. App. 1988) (stating that "periodic payments" taxable under I.R.C. § 71 (pre-1985) are not necessarily alimony or maintenance under Wisconsin law). This provision of the tax code was removed prior to the Jacobsons' divorce in 1989. Tax Reform Act, Pub. L. No. 98-369, Div. A, Title IV, Subtitle B, § 422(a), 98 Stat. 494, 795-97 (1984).

judgment is interpreted under the circumstances present at the time of its entry. *Id.* Whether the contract is ambiguous is a question of law to which we owe no deference to the trial court. *Weston v. Holt,* 157 Wis. 2d 595, 600, 460 N.W.2d 776, 779 (Ct. App. 1990). Only when judgments are ambiguous is construction permitted, allowing the court to consider the whole record—including pleadings, findings of fact and conclusions of law—to determine the intent of the parties. *See id.* at 601, 460 N.W.2d at 779.

We hold that the provisions of the judgment stating that the payments were maintenance were unambiguous. The stipulation incorporated into the judgment consisted of five distinct parts: child support payments, insurance for children, property division, assignment of debts, and maintenance. The maintenance section states:

> With regard to maintenance, the petitioner shall pay the sum of $106.00 weekly by income assignment to the respondent for a period of 7 years commencing forthwith, as of December 15, 1989.

The stipulation clearly states that the weekly payments are "maintenance." This section is spatially distinct from the property division section, and neither section refers to the other. The judgment is absolutely clear that the $106 weekly payments are maintenance payments, completely separate from the division of property. Because the terms of the judgment are unambiguous, we will not consider the rest of the record to determine the intent of the parties in making these allocations.[2]

---

[2] We note that at first blush the facts of *Spencer v. Spencer,* 140 Wis. 2d 447, 410 N.W.2d 629 (Ct. App. 1987), seem identical

Peter also argues that in addition to terminating future maintenance payments, he is entitled to repayment of all maintenance payments he made subsequent to Mary's remarriage. Peter contends that it would be unjust enrichment if the recipient of maintenance were allowed to keep the moneys paid merely because she kept her remarriage a secret.

Mary responds that the court has no statutory authority to terminate maintenance upon remarriage under sec. 767.32(3), Stats. The statute only gives the court such authority upon application of a party. Because the statute intends an affirmative duty upon the payor spouse to make the application, Mary argues

to this case. As in this case, *Spencer's* divorce judgment incorporated a stipulation of the parties. As an additional similarity, the stipulation provided for limited term monthly "support payments," but the stipulation and judgment were silent regarding whether the payments ceased upon the payee's remarriage. But in *Spencer* we held that the divorce judgment (with the incorporated stipulation) was ambiguous regarding whether payments were maintenance which terminated upon remarriage or property settlement installments. *Id.* at 451, 410 N.W.2d at 631.

The two cases differ in the consistency of their characterizations of the payments. The Jacobsons' stipulation called the payments "maintenance" and the judgment referred to the payments as "the temporary award of maintenance." These references provide consistent characterizations of the payments and support our holding that the judgment is unambiguous. In contrast, *Spencer's* stipulation referred to "spousal maintenance," while the judge noted that the payments would "constitute a full final and complete property settlement between said parties *in lieu of any provisions for alimony.*" *See id.* at 449, 410 N.W.2d at 630 (emphasis in original). This conflict provided the ambiguity which necessitated a reversal and remand in *Spencer* to determine the parties' intent regarding the classification of the payments.

that rewarding "dilatory performance of that duty" frustrates the legislative intent.

We hold that the case must be remanded to the circuit court. The court must consider the facts and equities of the case in making its discretionary decision of whether or not the order vacating maintenance should be retroactive to the date of the recipient's remarriage. *Hansen v. Hansen,* 176 Wis. 2d 327, 336, 500 N.W.2d 357, 361 (Ct. App. 1993). As to Peter's argument, were this a case of a maintenance payee hiding the fact of his or her remarriage so that maintenance payments could continue, a court could order repayment retroactive to the date of remarriage. *See id.* In this case, however, Mary states that she believed that she was entitled to maintenance even after remarriage and that notifying her ex-spouse of her remarriage was thus irrelevant. The circuit court is in a better position than this court to determine the factors which would support retroactivity. Because the court continued the maintenance payments, it did not consider the retroactivity issue. We remand to the circuit court to make this determination.[3]

---

[3] As we stated in *Hansen v. Hansen,* 176 Wis. 2d 327, 336, 500 N.W.2d 357, 361 n.3 (Ct. App. 1993), we suggest that family law practitioners and the family court consider including in the order or judgment for spousal maintenance a requirement that the payee immediately notify the clerk of court and the payor of remarriage. This suggestion is similar to the statutory requirement that the maintenance payor notify the clerk of court of any change of address. *See* sec. 767.263, Stats. Whether or not such a provision should be mandatory in each order or judgment for maintenance is for the legislature or the supreme court, under its supervisory authority, to decide.

*By the Court.*—Order reversed and cause remanded with directions.