IN RE the MARRIAGE OF: ESTATE OF Anne M. SCHULTZ,
Petitioner-Appellant,

v.

William F. SCHULTZ, Respondent-Respondent.

Court of Appeals

*No. 94–1267. Submitted on briefs February 3, 1995.—Decided May 24, 1995.*

(Also reported in 535 N.W.2d 116.)

800.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Gary L. Bendix* and *John M. Bruce* of *Savage, Gregorski, Webster, Stangel & Bendix, S.C.* of Manitowoc.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Terence P. Fox* of *Dewane, Dewane, Kummer & Lambert* of Manitowoc.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. In this case, the family court held that one of its property division determinations in a prior divorce judgment was ambiguous. Having so held, it then clarified its judgment. We hold that once we agree with the trial court that its own prior judgment is ambiguous, then we must accord great deference to the trial court's resolution of the ambiguity; we will not reverse unless the trial court's subsequent interpretation is devoid of reason. We affirm, but modify the order as hereafter explained.

Following a contested divorce trial, the family court issued a memorandum decision on July 21, 1989, that was reduced to written judgment on September 13, 1989. The judgment awarded Anne M. Schultz the home of the parties and divested William F. Schultz of all right, title and interest to the property. However, the family court further held that if Anne "desires to sell, assign, or transfer the home within the next ten (10) years, WILLIAM F. SCHULTZ shall have the right of first refusal to said property at the offered price."

Anne died on November 15, 1992. She did not sell, assign or transfer the property prior to her death. She had made a last will and testament. During probate of her estate, William, through his attorney, wrote the estate, asserting that Anne's death triggered the right of first refusal granted in the divorce judgment. The estate disagreed and William then filed a motion with

the family court to enforce the right of first refusal upon the estate.

The family court judge was the Honorable Darryl W. Deets. He noted that he was the same judge who heard what he termed the "very acrimonious" contested divorce trial and rendered the decision, findings of fact, conclusions of law and judgment in the case. He further observed that he is the judge assigned to the probate of Anne's estate. Judge Deets underscored his familiarity with the facts leading to the decision reserving William a right to first refusal in the homestead.

Judge Deets recalled that both Anne and William had an attachment to the home; they both wanted it assigned as part of their property division. Judge Deets recollected that while he awarded the property to Anne:

> I was concerned if she transferred the property primarily by selling it within a ten-year period after the divorce was granted, that first of all, it might be out of spite, and secondly, even if it wasn't out of spite, the property may pass outside the family and Dr. Schultz may never have the opportunity to possess it again unless he could negotiate with Ms. Schultz which was probably not likely.

The judge explained that the right of first refusal ruling traveled to the "attachment" claims asserted by both Anne and William. The judge mentioned that the attachment interests of both parties were substantial, but since the court was duty-bound to divide the property, it equitably chose to award the house to Anne. However, the judge did not want to extinguish William's attachment claim altogether. Thus, if for some reason Anne did not keep the property for ten years, then William was given a right to purchase the prop-

erty so as to satisfy his attachment interest in the property.

In the judge's view, William's attachment interest was active for a ten-year period, which interest was upon the land itself. The judge stated:

> [I]t was my intent . . . that this right of first refusal would survive Anne Schultz and that it would run with the land. This is based on the language that I used, and it's also clear that Dr. Schultz has a great attachment to that property, and for that reason, I believe that if the beneficiaries of Anne Schultz who are awarded the home would sell, assign or transfer the home within the period of time which would have been ten years from the date of the decision, that he has the right of first refusal to said property at the offered price.

The judge acknowledged that the language of his original decision spoke only to the sale, assignment or transfer of the property. However, the judge explained that whether the right of first refusal was against Anne personally or whether it ran with the land was ambiguously stated in the decision and the judge resolved the ambiguity. From this decision, the estate appeals.

The estate claims that the issue is whether a right of first refusal survives the death of the grantor of such a right. Having framed the issue in this manner, and finding no Wisconsin law to answer this question, the estate then cites law from other jurisdictions holding that a right of first refusal does not bind the personal representatives and heirs of the grantor of the right unless there is clear evidence that this was intended. *See, e.g., Old Mission Peninsula Sch. Dist. v. French*, 107 N.W.2d 758, 759 (Mich. 1961); *Kershner v. Hurlburt*, 277 S.W.2d 619, 623 (Mo. 1955). The estate then argues that the unambiguous language of the

804

family court judgment shows the right of first refusal being triggered by sale, assignment or transfer; death was not listed as one of the conditions triggering the right of first refusal.

In our view, the estate has stated the wrong issue. This is not a case where a person voluntarily grants a right of first refusal to another in a land transaction absent language indicating whether the right would be binding on the heirs. Nor is this a case where two or more parties strike an agreement outside of court and now seek the court's help in resolving a dispute about the meaning of the contract. Rather, this is a case where the drafter of the debated language is the judge himself. The drafter has interpreted his own unilateral decision; he has interpreted his own intent.

■■■■

A court interprets a judgment in the same manner as other written instruments. *Jacobson v. Jacobson,* 177 Wis. 2d 539, 546, 502 N.W.2d 869, 873 (Ct. App. 1993). A judgment is interpreted under the circumstances present at the time of entry. *Id.* at 546-47, 502 N.W.2d at 873. Whether a judgment is ambiguous is a question of law to which we owe no deference. *See id.* at 547, 502 N.W.2d at 873. In contract actions, Wisconsin law requires courts to interpret the meaning of particular provisions in a contract with reference to the contract as a whole; it is not sufficient to interpret only a portion. *Tempelis v. Aetna Casualty and Sur. Co.,* 169 Wis. 2d 1, 9, 485 N.W.2d 217, 220 (1992). So it is with other written instruments, including judgments. Likewise, written instruments should be considered in context. *See Wausau Joint Venture v. Redevelopment Auth.,* 118 Wis. 2d 50, 58, 347 N.W.2d 604, 608 (Ct. App. 1984). Ambiguity exists where the language of the written instrument is subject to two or more reason-

able interpretations, either on its face or as applied to the extrinsic facts to which it refers. *See Lohr v. Viney,* 174 Wis. 2d 468, 480-81, 497 N.W.2d 730, 735 (Ct. App. 1993).

In our de novo review, we look to the whole of the decision which was reduced to judgment. It is true that the decision awards Anne the home with the proviso that should she desire to sell, assign or transfer the home within the next ten years, William shall have the right of first refusal at the offered price. But the judge did not make this proclamation in a vacuum. Rather, just before the granting of the right of first refusal, the trial judge explained why he was doing this. He said in pertinent part:

> The Court is aware of William Schultz's attachment to the home. His attachment is historical through his family as well as practical in seeking a home for his new family. However, Mrs. Schultz's ties to the home are also long-standing.

We agree with the trial court that this language, which appeared just before the trial court's setting forth the right of first refusal and the conditions precedent to the activation of that right, renders the subsequent proviso ambiguous. This is because while the trial court was obviously attempting to create an "attachment interest" on behalf of William for ten years, the ultimate wording did not contemplate whether the "attachment interest" continued in the event of Anne's untimely death. Therefore, Anne's subsequent death created a fact situation rendering the proviso ambiguous as applied to that circumstance.

The decision of the trial court having been rendered ambiguous when applied to the facts of the case,

the remaining question is what deference do we give to the judge's resultant interpretation? In this case, the trial judge found that the apparently unambiguous proviso was rendered ambiguous because, as applied to the facts, the provision would repeal the central provision of his decision—to grant a right of first refusal that ran with the land. What kind of standard of review do we follow in examining the trial judge's construction?

There is no Wisconsin case law on point. However, we are not without guidance on the issue. We stated the following in *State v. Pepin,* 110 Wis. 2d 431, 328 N.W.2d 898 (Ct. App. 1982):

> The rationale behind all appellate review may be fairly characterized in two extremes: an appellate court will defer in large part to a trial court's determination where the lower court is in a better position to make that determination than is the appellate court; conversely, little or no deference is accorded where the appellate court is as capable of determining the question as is the trial court. Questions of fact are accorded deference because the trial court was present at the reception of evidence and had an opportunity to view the demeanor of witnesses and assess their credibility. Questions of law, on the other hand, are traditionally accorded little or no deference because there is nothing intrinsic to their determination which gives the trial court any advantage over an appellate court.

*Id.* at 435-36, 328 N.W.2d at 900 (citation omitted). Here, the issue is not whether we are faced with a question of law or a question of fact. Rather, the issue is whether we give deference to a judge after determining that certain language in a decision, which the trial judge drafted, is ambiguous. So, deciding what defer-

807

ence to give by determining whether the issue is one of fact or law is not helpful.

Yet, the "better position" analysis is still instructive. The *Pepin* court reasoned that "deference" is accorded to determinations founded on the trial court's viewing of the witnesses and on its reception of evidence. *Id.* Professor Ronald Hofer's research reveals that deference is given a trial court when that court has a "superior opportunity to get the 'feel of the case.'" Ronald R. Hofer, *Standards of Review - Looking Beyond the Labels*, 74 MARQ. L. REV. 231, 240 (1991) (quoting *Noonan v. Cunard Steamship Co.*, 375 F.2d 69, 71 (2d Cir. 1967)). "The deference may be seen rooted in whatever those intangibles are that elude print (notably, the print of the record on appeal) and that make up the 'climate' of the trial." *Id.* (footnote omitted).

Hofer writes that the "better position" analysis encompasses two different meanings of the word "experience." First, a trial tribunal's better position depends upon its having experienced or "sensed" the trial itself. Second, its better position may depend upon its prior experience, endowing it with superior practical knowledge. *Id.*

Based upon the *Pepin* rationale and Hofer's article, we conclude that deference is paid to a trial judge once we agree that the judge's own prior judgment is ambiguous because the resolution of the ambiguity is made based upon the judge's experience of trial or prior experience with the record. As Professor Maurice Rosenberg coined the term, "deference" is paid to a trial judge based upon the "you are there" reason. Hofer, *supra*, at 241 (quoting Maurice Rosenberg, *Appellate*

In this case, Judge Deets heard the acrimonious divorce trial. He observed the demeanor of the witnesses and passed upon their credibility. He found legitimate "attachment interests" existing for both Anne and William. The attachment interest was directly related to the property. Although the actual language of the resultant grant of first refusal rights did not mention whether the interest was personal or ran with the land, the judge resolved the ambiguity by relying upon his experience at trial and his own recollection of the record culminating in his decision.

Because Judge Deets's determination was based upon his having experienced or "sensed" the trial itself and because his status as the drafter of the decision in the divorce endowed him with superior practical knowledge of its meaning, we pay Judge Deets deference in his resolving of the ambiguity. Further, because there was a reasoned rationale to support Judge Deets's conclusion that he was clarifying, not modifying, his original decision, we will not reverse the determination.

Having concluded that Judge Deets was entitled to his clarification ruling and honoring the clarification, both parties attempt to lure us into making additional rulings regarding hypothetical situations that might occur in the estate proceeding or even thereafter. For instance, Judge Deets opined that *if* the estate would partially sell part of the property to a purchaser, William's right of first refusal would be triggered by that partial sale. However, we have not found from reading the record in this case any evidence yet existing that

such hypothetical events have actually come to pass. Thus, they are not ripe for judicial determination.

While we understand the good intentions of the trial court in wanting to deal now with potential issues that might arise, we do not feel comfortable issuing a declaratory judgment at the appellate level regarding situations and developments that have yet to occur in the estate proceedings. We therefore direct that all parts of Judge Deets's decision concerning hypotheticals be excised and, as modified, the order is affirmed.

*By the Court.*—Order modified and, as modified, affirmed.