## Cleaver Brooks, Inc. and The Coca-Cola Company, Plaintiffs-Respondents,

v.

## AIU Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA., Defendants-Appellants.†

Court of Appeals

*No. 2013AP203. Submitted on briefs September 3, 2013.*
*—Decided October 29, 2013.*

### 2013 WI App 135

(Also reported in 839 N.W.2d 882.)

† Petition for Review filed.

644

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael J. Cohen* and

*Pamela J. Tillman* of *Meissner Tierney Fisher & Nichols S.C.* of Milwaukee; *Mary Beth Forshaw*, pro hac vice, and *Bryce L. Friedman*, pro hac vice of *Simpson Thacher & Bartlett LLP* of New York, NY.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Paul R. Hoefle* and *Benjamin A. Menzel* of *Schroeder Group, S.C.*, Attorneys at Law of Waukesha; *Robert M. Horkovich*, pro hac vice and *Rene F. Hertzog*, pro hac vice of *Anderson Kill & Olick, P.C.* of New York, NY; *Martin M. McNerney, pro hac vice* and *John H. Fontham, pro hac vice* of *King & Splading, LLP* of Washington, DC.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. AIU Insurance Company, Inc., Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, P.A., ("the Insurers") appeal from the circuit court's 2013 order for declaratory judgment. The circuit court's 2013 order granted Cleaver-Brooks, Inc. and The Coca-Cola Company's motion for partial summary judgment, and directed the Insurers to simultaneously pay shares of indemnity proportional to their respective indemnity limits in the 1979 and 1980 policy years, such that the policies will exhaust at the same time. Additionally, National Union and AIU were ordered to cover the full amount of defense costs until all the policies' indemnity limits are exhausted. The Insurers argue on appeal that the circuit court erred in concluding that they must pay their policy limits for each policy year simultaneously, and instead contend they must be paid sequentially pursuant to a 2007 judgment. Because the plain language of the 2007 judgment, the plain language of the policies at issue, and caselaw do not support the Insurers' position, we affirm.

## BACKGROUND[1]

¶ 2. Cleaver-Brooks was a subsidiary of The Coca-Cola Company from 1970 through 1982 (collectively "Cleaver-Brooks" unless otherwise noted). During and after the time that Cleaver-Brooks was owned by Coca-Cola, Cleaver-Brooks was engaged in the business of, among other things, manufacturing and distributing packaged boilers, some of which contained asbestos. Beginning in the late 1980s and continuing to the present, Cleaver-Brooks was named as a defendant in over 200,000 lawsuits in which multiple plaintiffs sought damages from Cleaver-Brooks as a result of bodily injury or wrongful death allegedly caused by their exposure to asbestos in Cleaver-Brooks' products. Cleaver-Brooks expects it will be named in future asbestos-related lawsuits.

¶ 3. From January 1, 1979, through January 1, 1981, the Insurers insured Cleaver-Brooks through six excess liability insurance policies. The Insurers sold the policies as two substantively identical $35,000,000 packaged blocks, each consisting of three excess liability policies, one policy sold by each of the Insurers, and each block of three policies covering a single calendar year (1979 or 1980). Each policy in each block was triggered concurrently upon the exhaustion of the very same limit of $15,000,000 of underlying liability coverage. Within each block, the National Union and AIU policies provided both a duty to defend *and* a duty to indemnify. The Lexington policies did not include a

---

[1] The factual and procedural history of this case is complex, spanning at least three decades and countless lawsuits. For obvious reasons, we do not attempt to recite the entirety of that history. However, the parties appear to agree on the basic factual and procedural history surrounding the narrow issue raised by the Insurers on appeal. We address those facts here.

duty to defend; rather, the Lexington policies *only* included a duty to indemnify.

¶ 4. Beginning in 2004, dozens of insurers, including the Insurers here, were parties to a lawsuit filed in Milwaukee County Circuit Court ("the 2004 Coverage Action"). *Century Indemnity Co. v. Cleaver Brooks, Inc.*, Milwaukee County Circuit Court Case No. 04–CV–2852.[2] The 2004 Coverage Action addressed how liability for defense and indemnity expenses associated with the asbestos lawsuits against Cleaver-Brooks should be allocated among Cleaver-Brooks' insurance companies.

¶ 5. In a written order issued on October 17, 2005, when deciding Cleaver-Brooks' motion for partial summary judgment and addressing how the insurance companies' obligations should be allocated, the circuit court concluded that:

> a. Once an insurance company's *obligation to defend* [Cleaver-Brooks] is triggered, *that insurance company is jointly and severally liable together with all other similarly situated insurers for the full amount of the cost to defend* [Cleaver-Brooks], subject to any applicable policy limits, regardless of whether the occurrence itself or the injury it caused took place in part outside of that insurance company's policy period. "Pro rata time on the risk allocation method" does not apply to the duty to defend.

> b. Once an insurance company's *obligation to indemnify* [Cleaver-Brooks] is triggered, *that insurance company is jointly and severally liable up to its policy limits together with all other similarly situated insurers* for the full amount of [Cleaver-Brooks'] loss, regardless of

---

[2] The Honorable Francis T. Wasielewski presided over the vast majority of the 2004 Coverage Action, and entered all of the substantive orders in that action relevant to the Insurers' appeal here, including entry of judgment.

whether the occurrence itself or the injury it caused took place in part outside of that insurance company's policy period. "Pro rata time on the risk allocation method" does not apply to the duty to indemnify.[3]

(Emphasis added.)

¶ 6. On May 23, 2007, the circuit court in the 2004 Coverage Action issued another written order addressing "certain defendants' motions for partial summary judgment on the issues of drop down and exhaustion."[4] (Some formatting omitted.) In that order, the court "explain[ed] and clarif[ied its] previous order of October 17, 2005." In doing so, it stated that:

(a) The excess insurance companies' insurance policies are accessed by vertical exhaustion in a particular policy year. There will be no allocation by pro rata time on the risk.

(b) Cleaver-Brooks can choose the policy year in which it wishes to invoke coverage for each claim.

(c) No excess insurance policy is required to drop down or fill gaps created by insolvent insurance coverage underlying that excess insurance policy in the same policy year.

---

[3] While both parties cite to the circuit court's October 17, 2005 order, and that order appears in the Insurers' appendix, neither party has provided us with a valid citation for the location of the order in the record. As best we can tell, the October 17, 2005 order was included as an exhibit to an affidavit before the circuit court, and the exhibit was not included in the record when it was forwarded to this court. Nonetheless, neither party objects to our consideration of the order nor disputes the accuracy of the order included in the Insurers' appendix. Therefore, we rely on it.

[4] Again, both parties rely on the May 23, 2007 order, but do not give us a valid citation for its location, if any, in the record. Because both parties rely on and do not dispute the accuracy of the copy of the order included in the Insurers' appendix, we rely on it as well.

¶ 7. On July 24, 2007, the circuit court entered the final order in the 2004 Coverage Action, in which it expressly adopted both its October 17, 2005 order and its May 23, 2007 order ("the 2007 Judgment"). No one—neither the Insurers nor Cleaver-Brooks—appealed from the 2007 Judgment.[5]

¶ 8. At the time the circuit court issued the 2007 Judgment, the Insurers were not yet obligated to begin paying claims because the $15,000,000 in underlying liability insurance had not been exhausted. In 2010 or 2011, as the policies below the Insurers began to exhaust, Cleaver-Brooks notified the Insurers that their obligations would be coming due.[6] In response,

[5] The issue raised by the Insurers on appeal turns on the meaning of the 2007 Judgment. In their respective briefs to this court, each of the parties attempts to summarize the issues raised before the circuit court in the 2004 Coverage Action and each presents their own characterization of the opposing parties' arguments. Each of the parties does so with limited citation to the record or, in some instances, to exhibits that have not been included in the record provided to this court, in violation of this court's rules of appellate procedure. *See* Wis. Stat. Rule 809.19(1)(d) (2011–12). The record in this case is voluminous, spanning over eight banker's boxes. Because the parties did not always provide us with the necessary citations, we were not in every instance able to verify each party's version of the facts or confirm that all of the documents the parties cited in their appendixes were in fact also contained in the record. However, to the extent that one party does not directly contradict the other or complain that the other relied on a document not in the record, we accept the parties' representations and documents they rely on as accurate representations of what occurred in the 2004 Coverage Action. By failing to object to the opposing party's citation oversights, we conclude that any issue regarding those citations has been waived.

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[6] As we noted, the circuit court's May 23, 2007 order called for "vertical exhaustion," meaning that no excess insurance

National Union, and National Union alone, began providing 100 percent of Cleaver-Brooks' defense and indemnification costs for the relevant policy years. The Insurers informed Cleaver-Brooks that only one of the three policies would pay settlements and judgments at a time. More specifically, the Insurers informed Cleaver-Brooks that Lexington—who was not required to pay defense costs—would not pay for settlements and judgments at the same time as National Union or AIU.

¶ 9. The practical effect of the Insurers' position is that it accelerates exhaustion of the National Union and AIU indemnity limits by paying those limits first, and thereby reducing those policies' corresponding payments for defense costs in addition to the indemnity limits. Furthermore, after the National Union and AIU policies are exhausted, Cleaver-Brooks will be left without defense coverage when the Lexington policy is triggered. According to Cleaver-Brooks, "[s]uch a result would mean diminished coverage for Cleaver-Brooks and a breach of the . . . Insurers' obligation to fully defend and indemnify Cleaver-Brooks. The . . . Insurers' sequencing of their joint and several obligations may deprive Cleaver-Brooks of more than $30 million in defense coverage that National Union and AIU otherwise have to provide."

¶ 10. Consequently, Cleaver-Brooks initiated this action in 2011 ("the 2011 Coverage Action"),[7] seeking, among other things, a declaratory judgment setting forth the Insurers' obligations under the 2007 Judgment, specifically:

company was required to drop down or fill gaps created by an insolvent insurance company.

[7] The Honorable Timothy M. Witkowiak presided over the 2011 Coverage Action and entered all relevant orders.

(a) The joint and several obligations of the . . . Insurers to pay 100 percent of Cleaver-Brooks' defense and indemnity costs for the asbestos lawsuits; and

(b) The joint and several obligation of Lexington to pay 100 percent of Cleaver-Brooks' indemnity costs for the asbestos lawsuits under the 1979 Lexington policy upon demand by Cleaver-Brooks without delay, and together with indemnity payments from the 1979 AIU and National Union policies, until the policies are exhausted by payment of indemnity limits for the asbestos lawsuits.

¶ 11. In September 2011, Cleaver-Brooks filed a motion for partial summary judgment in the 2011 Coverage Action, asking the circuit court to find that the joint and several liability rulings set forth in the 2007 Judgment require Lexington to pay its indemnity costs simultaneously with National Union and AIU:

> Plaintiffs seek entry of partial summary judgment declaring, in accordance with the 2007 Final Judgment, that when Cleaver-Brooks has tendered claims to the . . . Insurers' policies in the 1979 policy year or the 1980 policy year, the . . . Insurers cannot withhold indemnity payments from the jointly and severally liable Lexington policy in a manner that would diminish the coverage available to Cleaver-Brooks. Instead, the Lexington, AIU, and National Union policies each must pay shares of indemnity proportional to their respective indemnity limits, such that the indemnity limit in each of the three policies would exhaust at the same time, with AIU and National Union covering the full amount of defense costs until those policies' indemnity limits are exhausted.

¶ 12. The circuit court initially denied Cleaver-Brooks' motion, concluding that the 2007 Judgment was unambiguous and did not contain language supporting simultaneous liability. Cleaver-Brooks filed a motion for reconsideration.

¶ 13. In May 2012, the circuit court issued a decision dismissing its prior order denying Cleaver-Brooks partial summary judgment, and granting partial summary judgment in Cleaver-Brooks' favor, concluding that "it erred in finding the 2007 Judgment unambiguous." The circuit court went on to explain that:

> [the] use of the phrase "joint and several liability" in [the] orders dated October 17, 2005, and May 23, 2007, renders the 2007 Judgment ambiguous as to whether the Defendants are required to pay indemnity costs simultaneously for the 1979 and 1980 policy years. . . .
>
> . . . .
>
> As a result of the ambiguity, the 2007 Judgment is open to construction by this Court in order to effectuate [the prior judge's] objective.

Based on the circuit court's review of the entire record in the 2004 Coverage Action, the circuit court concluded "that the most reasonable interpretation of the phrase 'joint and several liability' [in the 2007 Judgment] is one that imposes simultaneous [as opposed to sequential] indemnity obligations on the [Insurers]."

¶ 14. Thereafter, the Insurers filed a motion for reconsideration, arguing that the circuit court's decision violates Wisconsin law and the doctrine of claim preclusion by allegedly handing down a different judgment from that rendered in 2007. The circuit court denied the Insurers' motion for reconsideration, explaining as follows:

> [T]he Court construed the language of the 2007 Judgment, taking into consideration the circumstances present at the time [the judge in the 2004 Coverage Action] entered his decision. The Court concluded that [the prior judge's] use of the phrase "joint and several

liability" imposed simultaneous indemnity obligations on the [Insurers]. To clarify, this means that [Cleaver-Brooks] may choose more than one [of the Insurers] to indemnify [Cleaver-Brooks] for a given claim.

The parties could have clarified this issue with [the prior judge] following the entry of the 2007 Judgment. They did not. Instead, they waited four years and asked a different Judge to clarify the meaning of [the prior judge's] words. The fact that one party is unhappy with this Court's interpretation of ambiguous language is not grounds to reconsider the Decision.

The Insurers appeal.

## DISCUSSION

¶ 15. On appeal, the parties argue over the meaning of the 2007 Judgment and whether the circuit court in the 2011 Coverage Action correctly found that the 2007 Judgment directed the Insurers to pay their policy obligations simultaneously. The Insurers argue that the 2007 Judgment's use of the phrase "joint and several liability" was unambiguous and means that Cleaver-Brooks can choose only one of the three Insurers to indemnify it at a time, permitting the Insurers to exhaust their individual limits sequentially. Cleaver-Brooks argues that the 2007 Judgment unambiguously imposes joint and several liability which, under our Wisconsin caselaw, gives to Cleaver-Brooks the option of choosing more than one of the Insurers at a time to indemnify it for a given claim, such that the Insurers' payments are proportional to their liability and will exhaust at the same time. We agree with Cleaver-Brooks and affirm.

¶ 16. The issue raised by the Insurers asks us to review the circuit court's order for declaratory judg-

ment in the 2011 Coverage Action and its declarations of the parties' rights and obligations under the 2007 Judgment. "A court interprets a judgment in the same manner as other written instruments." *Jacobson v. Jacobson,* 177 Wis. 2d 539, 546, 502 N.W.2d 869 (Ct. App. 1993). "A judgment is interpreted under the circumstances present at the time of its entry." *Fessler v. Fessler,* 147 Wis. 2d 1, 8, 432 N.W.2d 103 (Ct. App. 1988). "Whether the [judgment] is ambiguous is a question of law to which we owe no deference to the [circuit] court." *Jacobson,* 177 Wis. 2d at 547. Only when judgments are ambiguous is construction permitted, allowing the court to consider the whole record—including pleadings, findings of fact and conclusions of law—to determine the intent of the parties. *Weston v. Holt,* 157 Wis. 2d 595, 601, 460 N.W.2d 776 (Ct. App. 1990).

## I. The language of the orders incorporated by reference into the 2007 Judgment unambiguously allows Cleaver-Brooks to require the Insurers to simultaneously pay their policy limits.

¶ 17. The October 17, 2005 order, incorporated by reference into the 2007 Judgment, explicitly states that an "insurance company is jointly and severally liable up to its policy limits together with all other similarly situated insurers for the full amount of [Cleaver-Brooks'] loss."[8] While the Insurers have taken the

---

[8] The language in the October 17, 2005 order is similar with respect to the duty to defend, stating that an "insurance company is jointly and severally liable together with all other similarly situated insurers for the full amount of the cost to defend [Cleaver-Brooks]."

position that the phrase "joint and several liability" "means that insurers defend [Cleaver-Brooks] individually and not by sharing" that is simply not the case.

¶ 18. BLACK'S LAW DICTIONARY defines "joint and several liability" as "[l]iability that *may be apportioned* either among two or more parties or to only one or a few select members of the group, *at the adversary's discretion." Id.* at 933 (8th ed. 2004) (emphasis added). Applying that definition to the 2007 Judgment, the phrase "joint and several liability" permits Cleaver-Brooks, as the adversary, to decide whether the Insurers apportion their liability simultaneously or sequentially for each of the relevant policy years. The Insurers have pointed to no language in the 2007 Judgment that would suggest that the circuit court in the 2004 Coverage Action meant to use the phrase "joint and several liability" in any way other than that commonly accepted or to any language in the 2007 Judgment that otherwise prohibits Cleaver-Brooks, as the adversary, from demanding payment from all three Insurers simultaneously.

¶ 19. Furthermore, even if the phrase "joint and several liability" in the 2007 Judgment was ambiguous, the language of the insurance policies and Wisconsin caselaw support the circuit court's conclusion that the 2007 Judgment permits simultaneous, as opposed to sequential, payment.

## II. Simultaneous indemnity obligations are consistent with the language in the underlying insurance policies.

¶ 20. The plain language of the parties' insurance policies requires the Insurers to pay their indemnity

obligations simultaneously. "Our goal in interpreting an insurance policy, like our goal in interpreting any contract, is to ascertain and carry out the parties' intentions. To that end, we interpret policy language according to its plain and ordinary meaning as understood by a reasonable person in the position of the insured." *Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶ 22, 338 Wis. 2d 761, 809 N.W.2d 529 (internal citations omitted).

¶ 21. The Insurers sold Coca-Cola two blocks of excess liability insurance, each worth $35,000,000. Each block of insurance contains one insurance policy from each of the three Insurers, and each block covers a single calendar year (either 1979 or 1980). The language in each of the three policies in each block— specifically, the language explaining that each policy is "part of" the block and the language explaining that each of the three policies is triggered by the exhaustion of $15,000,000 in underlying liability coverage— provides proof that the parties intended the policies to be triggered simultaneously.

¶ 22. First, each policy explicitly states that it is "part of" a larger $35,000,000 liability limit; in other words, each policy states that it is "part of" a larger block of concurrent coverage. If each of the three policies is triggered sequentially, as opposed to simultaneously, as the Insurers suggest, the "part of" language is essentially stricken from the policies entirely and each policy stands on its own. *See Goebel v. First Fed. Sav. & Loan Ass'n of Racine*, 83 Wis. 2d 668, 680, 266 N.W.2d 352 (1978) (When interpreting insurance policies, we "must avoid a construction which renders portions of [the policy] meaningless, inexplicable or mere surplusage.").

¶ 23. Second, the Insurers obligations under each policy are triggered upon exhaustion of the same $15,000,000 of underlying liability coverage. In order to accept sequential, stand-alone liability, as advocated by the Insurers, the plain language of at least two of the policies under each block of coverage would have to be rewritten to accommodate the liability limits of the policy or policies that must necessarily come before it. For instance, if National Union's limits must be exhausted before AIU's obligations are triggered, AIU's obligations are no longer triggered by exhaustion of the $15,000,000 in underlying liability coverage, but are instead triggered by the exhaustion of the $15,000,000 in underlying liability coverage *plus* the $10,000,000 in National Union's coverage.

¶ 24. Based upon the policies' language, we also reject the Insurers' argument that simultaneous payment of indemnity and defense costs abrogates the Insurers right to control the defense and settlement of claims. *See Bosco v. LIRC*, 2004 WI 77, ¶ 14 n.8, 272 Wis. 2d 586, 681 N.W.2d 157 (" 'the insurer maintains the right to control the defense, the settlement of a claim, and the payment of a claim within policy limits' ") (quoted source omitted). As we just set forth, the plain language of the parties' policies contemplates simultaneous payment of claims by the Insurers. Those terms were negotiated by the parties, and the Insurers cannot now try to change them when they do not play to the Insurers' advantage.

¶ 25. In sum, we conclude that the Insurers' position—that Cleaver-Brooks can only call upon one policy at a time—is contrary to the plain language of the parties' policies.

## III. Simultaneous indemnity obligations are consistent with caselaw.

¶ 26. We also reject the Insurers' contention that simultaneous indemnity obligations are contrary to the law. The Insurers first contend that our supreme court's decision in *Plastics Engineering Co. v. Liberty Mutual Insurance Co.*, 2009 WI 13, 315 Wis. 2d 556, 759 N.W.2d 613, prohibits simultaneous payments, that is, proration of payments, to satisfy an insured's duty to defend. Second, the Insurers cite to the concurrence/dissent in *Plastics* and three cases from foreign jurisdictions in an attempt to persuade us that the well-settled meaning of joint and several liability in insurance law is that a policyholder can choose only one policy to indemnify it at a time. Both assertions are entirely without merit.

¶ 27. First, the Insurers argue that *Plastics* broadly stands for the proposition that proration of responsibility for the duty to defend is prohibited in Wisconsin. In so arguing, the Insurers point to language in *Plastics* stating "that there can be no pro rata approach to the duty to defend." *See id.*, ¶ 60. The Insurers argue that because Wisconsin allegedly prohibits proration of insurers' duty to defend, and because the language in the 2007 Judgment is the same with regard to the duty to indemnify and the duty to defend, that the 2007 Judgment must prohibit proration of both. However, in so arguing, the Insurers take the court's statement in *Plastics* regarding proration of defense costs out of context.

¶ 28. The issue addressed by the supreme court in *Plastics* was the extent of one insurer's "duty to defend and indemnify when the claimant's alleged injury does not occur entirely within a policy period." *Id.*, ¶ 51. In other words, our supreme court was asked to deter-

659

mine, whether "the insurer [was] responsible for only a pro rata share of the damages based upon the years that it provided coverage relative to years when no coverage was purchased." *Id.*, ¶ 52. That is a very different question than the one presented here. Here, the issue is whether the 2007 Judgment impermissibly allowed multiple insurers, who sold their policies as part of a single block of coverage, to prorate their payments within a single coverage year. In other words, *Plastics* is inapplicable.

¶ 29. Second, the Insurers have not persuaded us that the four cases that they cite in their brief stand for the proposition that the well-settled meaning of joint and several liability in the context of insurance law is that a policyholder can pick *only* one policy to pay at a time. We turn to each case in turn.

¶ 30. The Insurers first rely on Justice Michael J. Gableman's concurring/dissenting opinion in *Plastics* and his statement that "joint and several" means that an insured "can choose one solvent insurer from which to seek payment quickly and with a minimum of litigation complexity." *See id.*, ¶ 90 (Gableman, J., concurring in part and dissenting in part). Contrary to the Insurers' contentions, Justice Gableman's statement supports our conclusion that Wisconsin caselaw permits simultaneous payment of claims by the Insurers here. Justice Gableman merely states that an insured "*can* choose one solvent insurer"; he does not *require* an insured to pick one solvent insurer. *Id.* (emphasis added). As such, his statement is consistent with our assertion that joint and several liability is "[l]iability that may be apportioned either among two or more parties or to only one or a few select members of the group, *at the adversary's discretion." See* BLACK'S LAW DICTIONARY at 933 (emphasis added).

660

¶ 31. The Insurers also cite to *Keene Corporation v. Insurance Co. of North America*, 667 F.2d 1034 (D.C. Cir. 1981), *Boston Gas Co. v. Century Indemnity Co.*, 910 N.E.2d 290 (Mass. 2009), and *Olin Corporation v. Insurance Co. of North America*, 221 F.3d 307 (2d Cir. 2000), for the proposition that joint and several liability means that an insured can only choose one policy to indemnify it at a time. However, again, the cases raised by the Insurers do not address the issue before this court, that is, how the Insurers' obligations, as part of a block of coverage, should be allocated among them in a single policy year. Each of the cases the Insurers rely on deals with an entirely different issue, that is, how insurance companies' obligations should be allocated among multiple policies (that were not bundled) across multiple coverage periods.

¶ 32. The Insurers have cited to no cases that suggest that joint and several liability cannot require them to simultaneously make payments to Cleaver-Brooks.

## IV. The Insurers improperly rely on the claim preclusion and estoppel doctrines.

██

¶ 33. We also reject the Insurers' arguments that claim preclusion and estoppel apply in this case, prohibiting Cleaver-Brooks' arguments.

¶ 34. The claim preclusion doctrine "provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 19, 279 Wis. 2d

520, 694 N.W.2d 879. "[C]laim preclusion has three elements: '(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits.' " *Id.*, ¶ 21 (citation omitted).

¶ 35. The Insurers claim that "[h]ere, claim preclusion should have barred [Cleaver-Brooks] from obtaining an apportionment ruling that [the circuit court] opposed and defeated in the 2007 Judgment." However, there is no identity of claims in the two lawsuits here. The 2004 Coverage Action sought a declaration on *liability* and this action, that is, the 2011 Coverage Action, sought a declaration of the meaning of *payment* provisions in the 2007 Judgment. The parties did not raise any questions regarding the meaning of the 2007 Judgment while the 2004 Coverage Action was pending. Furthermore, the 2007 Judgment that resulted from the 2004 Coverage Action did not directly address the simultaneous payment of obligations that we address here. We have rejected the Insurers' position that the 2007 Judgment directed Cleaver-Brooks to file its claims sequentially against the Insurers. Because we conclude that Cleaver-Brooks sought to enforce the 2007 Judgment when it filed the 2011 Coverage Action, and did not seek, as the Insurers contend, to rewrite that Judgment, the Insurers' claim preclusion argument is without merit.

¶ 36. The Insurers also attempt to persuade us that Cleaver-Brooks should be estopped from raising its argument for simultaneous enforcement of the policies because Cleaver-Brooks' position now directly contradicts the position it took before the circuit court in the 2004 Coverage Action. *See State v. Johnson,* 2001 WI App 105, ¶ 9, 244 Wis. 2d 164, 628 N.W.2d 431 (The

judicial estoppel doctrine prevents litigants from " 'playing fast and loose with the courts' " by asserting a position in a legal proceeding and then subsequently asserting an inconsistent position.) (citation omitted). The record provided to this court is obviously from the 2011 Coverage Action and contains only selected excerpts from the 2004 Coverage Action. As best we can tell based upon our review of the record and the excerpts of the 2004 Coverage Action brought to our attention by the parties, Cleaver-Brooks' position has remained consistent, in that it has always asked for joint and several liability among the Insurers.[9] The Insurers' arguments to the contrary are without merit.

## CONCLUSION

¶ 37. In short, the 2007 Judgment adopted the language in its previous orders, directing that the Insurers were "jointly and severally liable" with all other similarly situated insurers for both their obligations to defend and indemnify Cleaver-Brooks. Joint and several liability, by its plain terms, permits Cleaver-Brooks, as the insured, to decide whether the Insurers

---

[9] In support of its argument that Cleaver-Brooks argued for proration of liability in the 2004 Coverage Action, the Insurers cherry-pick several sentences of argument that

Cleaver-Brooks apparently made before the circuit court without giving this court any context for the statements. We are unable to verify the accuracy of the statements or even determine in what context they were made because the exhibits to which the Insurers cite are not at the location indicated by the Insurers' briefs and we are otherwise unable to find the exhibits in the voluminous record provided to us. As the appellants, the Insurers are responsible for perfecting the appellate record. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26–27, 496 N.W.2d 226 (Ct. App. 1993). We must assume that any missing material supports the circuit court's ruling. *Id.*

pay their obligations within a single policy period simultaneously or sequentially. Cleaver-Brooks' decision to call upon the Insurers simultaneously is consistent with the language in the parties' insurance policies and is consistent with caselaw. Furthermore, simultaneous payment does not act to make Cleaver-Brooks more than whole; each of the Insurers' policies is still subject to its policy limits and any additional defense costs were contemplated by the parties when they signed the policies permitting simultaneous payment of claims.[10]

*By the Court.*—Order affirmed.

[10] We need not address the Insurers' argument that the circuit court impermissibly relied on insurance premiums paid by Cleaver-Brooks because our review is *de novo* and we decide this case on slightly different grounds. *See Jacobson v. Jacobson*, 177 Wis. 2d 539, 546, 502 N.W.2d 869 (Ct. App. 1993) (*de novo* review); *see also Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973) (appellate court can affirm on any theory).

Furthermore, we also note that our rules of appellate procedure require that all arguments be raised in the argument section of a party's brief. *See* WIS. STAT. RULE 809.19(1)(e). To the extent the Insurers believe they have raised an argument in their statement of the case or their statement of facts that they do not again raise in the argument section of their brief, we do not address it.