Daniel D. BETHARDS, Petitioner-Respondent,

v.

STATE of Wisconsin DEPARTMENT OF WORKFORCE DEVELOPMENT, Equal Rights Division and State of Wisconsin Department of Justice, Respondents-Appellants.

Court of Appeals

*No. 2016AP409. Submitted on briefs October 3, 2016.
—Decided May 2, 2017.*

2017 WI App 37

(Also reported in 899 N.W.2d 364.)

352

On behalf of the respondent-appellants, the cause was submitted on the joint briefs of *Charlotte Gibson*, assistant attorney general, and *Brad D. Schimel*, attorney general, and *Steven C. Zach* of *Boardman & Clark LLP*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Kyle H. Torvinen* and *Lukas J. Saunders* of *Torvinen, Jones, Routh, Torvinen & Saunders, S.C.*, Superior.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. HRUZ, J. The issue presented in this WIS. STAT. ch. 227 (2013–14)[1] review is whether the Wisconsin Department of Workforce Development's Equal Rights Division ("ERD") erred when it concluded a former state employee failed to comply with the Whistleblower Protection Law, WIS. STAT. §§ 230.80–

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted. References to WIS. STAT. ch. 227 are to the 2013–14 version, which was the version in effect when Bethards sought judicial review of the administrative determination.

230.89. Specifically, the employee challenges as unreasonable the ERD's interpretation of the term "supervisor" in § 230.81(1) as including only those individuals within an employee's supervisory chain of command. He also argues his agency's human resources director was one of his "supervisors," or at a minimum this is a factual issue warranting an evidentiary hearing.

¶ 2. Applying due weight deference to the ERD's interpretation of WIS. STAT. § 230.81(1), we conclude the employee's interpretation of that statute is not more reasonable than the ERD's. We also conclude the ERD could reasonably determine, based on the undisputed evidence before it, that the agency's human resources director was not a "supervisor" of the employee. We therefore reverse the circuit court's determination to the contrary and uphold the ERD's decision.

## BACKGROUND

¶ 3. Daniel Bethards was employed as a Wisconsin Department of Justice ("DOJ") special agent in its Division of Criminal Investigation ("DCI") between October 10, 1999, and October 10, 2013. The DCI's mission and functions are solely directed toward criminal investigations, and its staff includes special agents who are sworn law enforcement officers possessing statewide jurisdiction. The DOJ asserts there is a chain of command within the DCI "typical [of] paramilitary police organizations." The DCI is headed by the DCI Administrator, who reports directly to the Deputy Attorney General. David Matthews was the DCI Administrator at all times relevant to this appeal.

¶ 4. The DCI's second-in-command is a Deputy Administrator, who is in charge of the DCI's Eastern

and Western regions. Each region is headed by a Director of Operations, who reports directly to the Deputy Administrator. DCI field offices are located in major cities throughout the state. Each field office is headed by a Special Agent in Charge ("SAC"), who reports directly to the regional Director of Operations. Special agents, such as Bethards, are assigned work out of the various field offices, and they report directly to the applicable SAC.

¶ 5. In 2012, Bethards came to believe that his SAC, Jay Smith, was violating state and federal firearms laws. Bethards took medical leave for an unspecified reason in October 2012, which Bethards later claimed was due to stress caused by his having knowledge of Smith's violations. Bethards sought advice regarding his medical leave from DOJ Human Resources Director Mary Casey on December 17, 2012. He indicated in his email that Smith had requested his return to work and that Bethards believed Smith was attempting to terminate Bethards' employment with the DOJ.[2]

¶ 6. On December 19, 2012, at 11:57 a.m., Bethards sent an email to both DCI Administrator Matthews and Human Resources Director Casey with the subject line, "Official notification to DOJ." Attached to the email was a three-page document in which Bethards described his knowledge of Smith's

---

[2] In the December 17, 2012 email to Casey, Bethards also stated he had "federal felony criminal violations information regarding one of your supervisors" and also had "info that will show members of DCI are committing federal violations." However, Bethards did not provide any specific information related to the alleged violations, including the identity of the agent involved or the alleged violations. Before the ERD, the DOJ asserted Bethards' December 17, 2012 email violated Wis. Stat. § 230.81(1). It has since abandoned that argument.

alleged violations of state and federal firearms laws. Matthews replied to Bethards at 12:10 p.m., acknowledging receipt of the email. Casey acknowledged the same shortly thereafter.

¶ 7. Based on events that followed his December 19, 2012 disclosure, Bethards filed three retaliation complaints, on various dates, with the ERD.[3] Bethards filed ERD Case No. CR201300903 on April 11, 2013, alleging that, as a result of his disclosures regarding Smith (and precipitated by a "goodbye" email Bethards had sent coworkers regarding the situation and his perception that he was about to be terminated), Smith had told the heads of local law enforcement that Bethards was suicidal. In addition, the DOJ revoked Bethards' law enforcement credentials, service weapons and laptop, and restricted his access to his office and the DOJ computer system. Smith's and the DOJ's actions formed the bases for Bethards' first complaint.

¶ 8. Bethards underwent a "fitness for duty" evaluation on May 27, 2013. On June 3, 2013, Matthews notified Bethards that he had passed the evaluation and would be reinstated from his October 2012 medical leave effective June 1, 2013. However, Matthews stated Bethards would be placed on paid administrative leave as of June 2, "while the department conducts an internal review of possible DOJ work rule and DCI policy violations." Bethards eventually filed ERD Case No. CR201302058 on July 27, 2013, alleging that he was placed on administrative leave in retaliation for his December 19, 2012 disclosure regarding Smith.

---

[3] The administrative record alludes to a fourth whistleblower complaint, ERD Case No. CR201301184, which was dismissed after a finding of no probable cause. Bethards apparently did not appeal that determination, and that complaint is not at issue on appeal.

¶ 9. Bethards was terminated from his employment by Deputy Attorney General Kevin St. John on October 10, 2013. Following its internal investigation, the DOJ had concluded Bethards violated work rules and policies pertaining to untruthfulness, discourtesy, inappropriate use of state resources, improper disclosure of confidential information, and insubordination. The DOJ determined, among other things, that Bethards' allegations regarding Smith's conduct—as well as his subsequent allegations about DOJ favoritism and a conspiracy—were "baseless, dishonest, and in violation of numerous DOJ rules and policies."[4] On October 14, 2013, Bethards filed ERD Case No. CR201303023, asserting his termination was a direct result of his disclosure on December 19, 2012, of Smith's alleged violations of state and federal law.

¶ 10. The ERD found probable cause to believe the DOJ violated the Whistleblower Protection Law—specifically, WIS. STAT. § 230.83—by placing Bethards on administrative leave in June 2013 and by terminating his employment in October 2013. These actions were the bases for Bethards' second and third complaints. The ERD made a "no probable cause" finding with respect to Bethards' first complaint. The ERD investigator accepted the DOJ's claim that it had revoked Bethards' credentials and equipment and had restricted his access to DOJ property not because of his December 19, 2012 disclosure, but because of his subsequent "opinionated and accusatory emails to DOJ employees." Bethards requested an administrative hearing on the ERD's "no probable cause" finding. All three cases were set for a hearing before an administrative law judge (ALJ).

---

[4] The veracity of Bethards' allegations regarding Smith's conduct is not relevant to this appeal.

¶ 11. The DOJ filed a motion to dismiss the complaints, and the three cases were consolidated for the purpose of deciding the motion. Among other things, the DOJ argued that Bethards' December 19, 2012 disclosure of Smith's alleged violations failed to comply with WIS. STAT. § 230.81(1)(a), in that Bethards had not notified a "supervisor" before making the disclosure to anyone else. The DOJ asserted that by emailing a person within his chain of command (DCI Administrator Matthews) at the same time he emailed a person in another department (Human Resources Director Casey), Bethards was not protected from retaliatory employment actions, even assuming such retaliation occurred.

¶ 12. Bethards responded by emphasizing that Matthews had acknowledged receipt of his December 19, 2012 email before Casey had done so. He also asserted Casey was effectively his supervisor because she was "in a position of authority, command, and supervision over DOJ agents." Bethards' brief relied on what he perceived as the general purposes of a human resources department:

> Employees understand that human resources depart-
> ments do have disciplinary authority over them, but
> they are viewed routinely, and by design[,] . . . as
> somewhat independent, stand-alone divisions of par-
> ticular agencies which are meant to look out for the
> protection of the employee.
>
> . . . .
>
> Despite human resources departments here and
> everywhere attempting to make the employee comfort-
> able with going to human resources for support and
> assistance, the State now wants to play a game of
> "gotcha", because an employee took them up on what is

358

and always has been an open invitation to feel comfortable going to Human Resources with such reports.

Despite Bethards' claim that he believed Casey was a "supervisor" under Wis. Stat. § 230.81(1), the only affidavit he submitted with his brief was from his attorney.[5]

¶ 13.　The DOJ's reply brief pointed out this lack of evidence supporting Bethards' position. The DOJ also submitted its own affidavits. The first, from Division of Management Services ("DMS") Administrator Bonnie Cyganek, stated the DOJ's human resources department was organized under the DMS. According to Cyganek, the DMS provides "operational support to the DOJ," including by preparing budgets, managing personnel, and providing information technology services. Cyganek averred that Casey was not within Bethards' supervisory chain of command and "no DOJ employee within the DMS has supervised any DOJ employee within any other division." The second affidavit, from DCI Administrator Matthews, described the chain of command within the DCI. *See supra* ¶¶ 3–4. In all, the DOJ reaffirmed its position that, because Bethards simultaneously disclosed information to a supervisor and to a non-supervisor, he was not entitled to whistleblower protection and his complaints should be dismissed.

¶ 14.　The ALJ agreed with the DOJ. The ALJ acknowledged Bethards' contention that Casey was one of his supervisors, but it concluded the "information presented by the parties in relation to the motion

---

[5] The affidavit purported to contain the December 19, 2012 acknowledgment emails from Matthews and Casey, as well as two prior administrative decisions Bethards cited as supportive authority.

to dismiss does not support that to be the case." As a result, the ALJ determined Bethards was not entitled to whistleblower protection given his simultaneous disclosure to someone outside his supervisory chain of command. The ALJ noted the tension between this result and Wisconsin's stated policy of protecting whistleblowers. However, the ALJ remarked it was obligated to apply the Whistleblower Protection Law as written.

¶ 15. Bethards filed separate petitions for judicial review in each case under WIS. STAT. ch. 227. His petitions were consolidated, and the DOJ filed a notice of appearance on the ERD's behalf.[6] The circuit court found the matter to be one of first impression for the ERD and applied a de novo standard of review, under which it found the ALJ's determination to be inconsistent with the legislature's stated policy of protecting whistleblowers from retaliation. Relying on the definition of "supervisor" contained in Subchapter V of WIS. STAT. ch. 111,[7] the court accepted Bethards' argument

---

[6] See WIS. STAT. § 230.87(1) ("Upon [judicial] review, or in any enforcement action, the [DOJ] shall represent the [ERD] unless a conflict of interest results from that representation."). Because the ERD and the DOJ have submitted joint briefing in this case, we will refer to those entities collectively as the "State" where appropriate.

[7] See WIS. STAT. § 111.81(19). That subsection is contained in the subchapter entitled "State Employment Labor Relations." There is no indication the legislature intended to import this definition into WIS. STAT. ch. 230, and we therefore do not further address whether the term "supervisor" necessarily means the same thing under each chapter. However, we agree with the circuit court insofar as the WIS. STAT. ch. 111 definition may provide either the ERD or courts with some guidance as to what the term may mean in other portions of the Wisconsin Statutes, even if that definition is not binding with respect to Chapter 230.

that Casey was his "supervisor" and deemed it "axiomatic that HR departments in all manner of work environments are responsible for hiring, firing, discipline, benefits management, payroll, promulgating workplace rules, training employees, and other like tasks." The State now appeals the circuit court's order setting aside the ERD's decision.

## DISCUSSION

■

¶ 16. In an administrative appeal under WIS. STAT. ch. 227, we review the agency's decision, not the circuit court's. *Adams v. State Livestock Facilities Siting Review Bd.*, 2012 WI 85, ¶ 24, 342 Wis. 2d 444, 820 N.W.2d 404. Because this case was decided without a hearing, this court "shall set aside, modify or order agency action if the facts compel a particular action as a matter of law, or it may remand the case to the agency for further examination and action within the agency's responsibility." WIS. STAT. § 227.57(7). In addition, we "shall set aside or modify the agency action if [we] find[] that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action," or we may articulate the correct interpretation and remand to the agency for further action under that interpretation. Sec. 227.57(5). In all events, the petitioner—here, Bethards—bears the burden of demonstrating that the agency decision should be modified or set aside. *Racine Educ. Ass'n v. Commissioner of Ins.*, 158 Wis. 2d 175, 182, 462 N.W.2d 239 (Ct. App. 1990).

■

¶ 17. This case primarily involves the interpretation of Wisconsin's Whistleblower Protection Law. "In order to gain protection under the whistleblower

law, an employee must meet the requirements laid out in the relevant statutory provisions." *Hutson v. State of Wis. Pers. Comm'n*, 2003 WI 97, ¶ 38, 263 Wis. 2d 612, 665 N.W.2d 212. Under WIS. STAT. § 230.83(1), no supervisor may "initiate, or threaten to initiate or administer, any retaliatory action against an employee." "Retaliatory action" is defined as including any "disciplinary action taken" because an employee "lawfully disclosed information under [WIS. STAT. § 230.81] . . . ." WIS. STAT. § 230.80(8)(a).

¶ 18. "Information" is a defined term meaning, as relevant here, information the employee reasonably believes demonstrates a violation of any state or federal law, rule or regulation. WIS. STAT. § 230.80(5)(a). To obtain protection under WIS. STAT. § 230.83, "before disclosing that information to any person other than his or her attorney, collective bargaining representative or legislator," the employee must either "[d]isclose the information in writing to the employee's supervisor," *see* WIS. STAT. § 230.81(1)(a), or seek guidance from the ERD as to what is the appropriate governmental unit to receive the disclosure, *see* § 230.81(1)(b).

¶ 19. On appeal, Bethards does not dispute that WIS. STAT. § 230.81(1)(a) conditions whistleblower protection upon his disclosing information to one or more of his supervisors before he does so to any other person. He also does not assert he sought guidance from the ERD as to what was the appropriate governmental unit to receive his disclosure. Rather, Bethards argues the ALJ interpreted the term "supervisor" too restrictively, and he urges us to adopt an interpretation that may include employees within a human resources department. Bethards asserts Casey was, in fact, his "supervisor" and, for this reason, his simultaneous disclosures to Casey and Matthews on December 19, 2012, entitled

him to protection from retaliatory employment actions.[8] Finally, Bethards argues this liberal interpretation of "supervisor" is consistent with the legislature's apparent intention to protect whistleblowers.

¶ 20. To address these arguments, we first determine what level of deference we must accord to the ERD's interpretation and application of the Whistleblower Protection Law in this case. We ultimately conclude due weight deference is appropriate. Second, applying that level of deference, we analyze whether the ERD's interpretation of Wis. Stat. § 230.81(1) is at least as reasonable as Bethards' interpretation of that statute. We conclude the ERD's interpretation that "supervisor" means only those within an employee's supervisory chain of command is no less reasonable than Bethards' construction, and it sufficiently adheres to the legislature's intent to protect whistleblowers. In the course of applying that construction, we also conclude the ERD reasonably determined, based on the undisputed evidence before it, that the DOJ's Human Resources Director was not one of Bethards' "supervisors."

*I. Level of Agency Deference*

¶ 21. Under Wis. Stat. § 227.57(10), we are required to accord appropriate weight to the "experience,

---

[8] Before the ERD, the DOJ made the specious argument that Bethards had not complied with Wis. Stat. § 230.81(1) because, according to his own argument, he had not disclosed the information to any person other than a supervisor, which "outside" disclosure was required to obtain whistleblower protection. The ALJ rejected the argument that "the law requires disclosure to someone outside the supervisory chain of command . . . in order to obtain the protection of the statute." The State has wisely abandoned its argument in this regard on appeal.

technical competence, and specialized knowledge of the agency involved." The parties dispute which of the three levels of agency deference is appropriate in this case: great weight, due weight, or de novo. *See Hutson*, 263 Wis. 2d 612, ¶ 31. Although we review questions of statutory interpretation de novo, and thus are not bound by the agency's interpretation, the degree of deference owed to an agency's interpretation generally "depends on the comparative institutional capabilities and qualifications of the court and the administrative agency." *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449 (1994).

¶ 22. Bethards argues de novo review is appropriate. An agency's interpretation is owed no deference "when the case is clearly one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented." *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 245, 493 N.W.2d 68 (1992). Bethards' argument in this regard rests solely on the ALJ's failure to cite any legal authority other than the statute itself in its decision, including other agency rulings on which the parties rely.[9] *See infra* ¶¶ 25–29.

¶ 23. The supreme court in *Kelley Co.* deemed it "evident" that the matter was one of first impression because the hearing examiner did not rely on any precedent in its written decision. *See Kelly Co.*, 172 Wis. 2d at 245. Although the ALJ here did not cite any

---

[9] The administrative decisions the parties cite as authority were issued by the Wisconsin Personnel Commission ("WPC"), which was abolished in 2003. However, according to the WPC's website, WPC rulings "continue to be cited in decisions that are issued by successor agencies," including the ERD. WISCONSIN PERS. COMM'N, http://pcm.state.wi.us (last visited Apr. 27, 2017).

legal authorities other than the statute, we do not believe its decision reflects that the ALJ was working from a blank slate. Rather, the parties' administrative briefing extensively discussed applicable agency precedent, and their submissions included copies of several relevant agency decisions. The ALJ used phrases like "supervisory chain of command" and "simultaneous[] ... disclosure" which clearly mimic, and reflect knowledge of, the existing administrative case law. *See infra* ¶¶ 25–29. Moreover, the Wisconsin Personnel Commission (WPC) decision under review in *Hutson* suffered from a similar deficiency (i.e., citing only one prior case when, in fact, there were many that addressed "the sufficiency of disclosures under the whistleblower law"), yet our supreme court nonetheless concluded the agency decision there should be accorded due weight deference. *See Hutson*, 263 Wis. 2d 612, ¶¶ 35–36.

¶ 24. Bethards also argues the WPC's prior decisions regarding whistleblower protection have produced wildly divergent outcomes, such that "[t]he message from the agency line of cases is that disclosure is acceptable to outsiders sometimes, but not all the time, and as a result there is no consistent application of the law to be found." We disagree. The parties have identified five WPC decisions potentially bearing on the issue that was before the ERD in this case. In each of these cases, the WPC appears to have applied the rule that an employee must make a disclosure to a person in the employee's supervisory chain of command, and—except as otherwise provided in WIS. STAT. § 230.81(1) —must do so prior to disclosing to any other person. The cases also demonstrate that, while the particular facts here might be unique, the matter is not "clearly one of first impression" such that de novo review is appropriate.

¶ 25. Bethards' brief to the ERD cited the WPC's *Morkin* decision. In *Morkin,* the WPC concluded a letter alleging nepotism in hiring, written by a maintenance worker at the University of Wisconsin-Madison Physical Plant, was a protected disclosure because it was addressed to the UW President, the campus Chancellor, and the Physical Plant Director—all individuals within the worker's "supervisory chain above him." *Morkin,* Case No. 85–0137–PC-ER (Nov. 23, 1988), http://pcm.state.wi.us/pdfdecisions/85–0137–PC-ER-B.pdf.

¶ 26. Bethards also relied on *Kortman,* in which an employee of the UW-Madison Affirmative Action Office induced a UW-Madison food services employee to make certain disclosures. The Affirmative Action Office employee, in turn, promised to relay the disclosures in writing to the Memorial Union Food Service Director, who was within the complainant's chain of command. The WPC applied the doctrine of promissory estoppel to conclude the food service employee's disclosures were protected under Wis. Stat. § 230.81(1)(a), because the employee simply relied on inducements and representations from "an agent of respondent [UW-Madison]" not to file the complaint directly with the employee's supervisor and that the communication would be given to the necessary individuals. *Kortman,* Case No. 94–0038–PC-ER (Nov. 17, 1995), http://pcm.state.wi.us/pdfdecisions/94–0038–PC-ER-A.pdf.

¶ 27. The DOJ relied on *Williams v. WPC,* Dane County Circuit Court Case No. 96CV2353 (Nov. 19, 1997), a circuit court decision affirming a WPC determination dismissing the petitioner's complaint.[10] Cit-

---

[10] Bethards objects that *Williams* is "of no use to this [c]ourt" because it is a circuit court decision and this court is

ing *Morkin*, the WPC concluded the complainant, a part-time food services worker at the University of Wisconsin Hospital and Clinics, had failed to provide "her immediate supervisor or anyone else in her supervisory chain of command" with a copy of her written disclosure regarding an alleged cockroach infestation. Instead, the employee, among other things, filed a health and safety grievance with University Health Services and made open records requests of a private pest control business, thereby forfeiting whistleblower protection.

¶ 28. The DOJ also relied on *Ochrymowycz*, Case No. 99–0161–PC-ER (June 6, 2000), http://pcm.state. wi.us/pdfdecisions/99–0161–PC-ER-A.pdf. There, the WPC dismissed the complaint of a person employed as a laboratory manager at UW-Eau Claire. As relevant here, the WPC applied *Williams* to hold that whistleblower protection is contingent upon an employee disclosing to a person in the employee's supervisory chain of command before disclosing to any other person. Applying this rule, the WPC dismissed the employee's various retaliation claims because the disclosures were either: (1) not made by the employee; (2) not made to a person in the employee's supervisory chain of command (these included disclosures to UW attorneys, the chair of the faculty senate, and an official in the Wisconsin Department of Commerce); or (3) not made to a supervisor prior to disclosure to

"thus deprived of any ability to examine the methodology, reasoning, decision making, or rationale" of the WPC. The WPC decision is publicly available. *See Williams*, Case No. 93–0213–PC-ER (Sept. 17, 1996), http://pcm.state.wi.us/pdf decisions/93–0213–PC-ER-A.pdf. Also, the circuit court decision adequately sets forth the WPC's reasoning and, in fact, contains a block quote of the relevant section of the agency decision.

another person, but rather made simultaneously to a supervisor and to non-supervisors, the latter of which included officials in the UW System Office of Safety and Loss Prevention and in the Department of Natural Resources.

¶ 29. Finally, the DOJ relied on *Jenkins*, in which an employee in the DOJ's Bureau of Computing Services, which was organized within the DMS, emailed the administrator of another division regarding his concerns with the adequacy of a contractor's coding work. *Jenkins*, Case No. 00–0051–PC-ER (Oct. 4, 2000).[11] The employee was later terminated, and the WPC concluded he was not entitled to whistleblower protection because he failed to initially disclose his concerns to an individual within his DMS chain of command. The WPC rejected the employee's assertion that any individual appointed by the Attorney General was a valid recipient of the disclosure under an agency theory.

¶ 30. The State argues these decisions demonstrate a longstanding interpretation of the Whistleblower Protection Law sufficient to require great weight deference to the ERD decision here. Great weight deference is appropriate when the following conditions are met:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the statute is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agen-

---

[11] *Jenkins*, Case No. 00–0051–PC-ER (Oct. 4, 2000), is not available on the WPC's website, but it is contained in the record.

cy's interpretation will provide uniformity and consistency in the application of the statute.

*Hutson*, 263 Wis. 2d 612, ¶ 32 (quoting *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996)) (alterations omitted). Although great weight deference has been called the "general rule" in Wisconsin, *see id.*, we conclude it is not appropriate here.

¶ 31. Great weight deference is generally applied when the nature of the legal question requires that the agency make factual determinations or make value or policy judgments entwined with the answering of that question. *Id.* In this case, the ERD's interpretation (like that of the WPC before it) is a straightforward exercise in statutory interpretation, which the ERD is in no better position than this court to do. The term "supervisor" and the phrase "an employee's supervisor" are not technical and do not otherwise require specialized knowledge to comprehend and apply. The ERD's interpretation is not contingent upon factual determinations or policy judgments; those have largely been made by the legislature. The ERD, like this court, is obligated to construe statutes according to their plain language, and it may not endorse an interpretation that is "clearly contrary to legislative intent, or is otherwise unreasonable or without rational basis." *State ex rel. Parker*, 184 Wis. 2d at 699–700.

¶ 32. The State correctly notes that the ERD is statutorily authorized to administer the Whistleblower Protection Act. *See* WIS. STAT. §§ 230.85, 230.89. While this factor supports the ERD's argument that its interpretation is entitled to great weight, other factors militate against such a conclusion. Although it is clear the ERD has experience in applying the Whistleblower

369

Protection Law, the parties have directed us to only five relevant administrative decisions over an approximately thirty-year time span. In only one of those decisions did the ERD apply the rule that simultaneous disclosure to a supervisor and non-supervisor removes the employee's protection. *See Ochrymowycz*, Case No. 99–0161–PC-ER (June 6, 2000).[12] Moreover, one of the agency decisions, which is apparently unique, was decided on a novel promissory estoppel theory. *See Kortman*, Case No. 94–0038–PC-ER (Nov. 17, 1995).[13] While consistent agency interpretations generally provide useful guidance, there are no indications the ERD "employed its expertise or specialized knowledge in forming" its interpretation of the term "supervisor." *See Hutson*, 263 Wis. 2d 612, ¶ 32 (quoting *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996)); *see also Michels Pipeline Const. v. LIRC*, 2008 WI App 55, ¶ 10, 309 Wis. 2d 470, 750 N.W.2d 485. We also note that neither the WPC nor the ERD has apparently addressed the argument that whistleblower protection is warranted for the disclo-

---

[12] Bethards argues *Ochrymowycz* is distinguishable because, in this case, Bethards "had been consulting, and invited to consult [Casey], regarding these issues" prior to the disclosure. This is a perilous argument for Bethards to make if Casey was not, in fact, his supervisor under WIS. STAT. § 230.81(1)(a), and we otherwise reject Bethards' arguments regarding the import of his consultations with Casey prior to the December 19, 2012 disclosure. *See infra* ¶ 32 n.13; ¶ 42 n.17.

[13] Although Bethards claims Casey was "already 'in the know' " and had "invited his contact with her office if he had concerns," he provides no record citations in support of these factual assertions. Moreover, Bethards does not suggest Casey induced him to make the disclosures or promised to communicate them to an individual within Bethards' supervisory chain of command, either generally or specifically under the Whistleblower Protection Law.

sure of information to a human resources director (or like personnel) within an employee's relevant agency or other institution.

¶ 33. For the foregoing reasons, we conclude the ERD's interpretation of the term "supervisor" under WIS. STAT. § 230.81(1) is entitled to the intermediate level of deference. "Due weight" deference is appropriate when the agency "has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Hutson*, 263 Wis. 2d 612, ¶ 33 (quoting *UFE Inc.*, 201 Wis. 2d at 286). Due weight deference "is not so much based upon [the agency's] knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question." *UFE Inc.*, 201 Wis. 2d at 286. This level of deference is properly applied when "the agency has had at least one opportunity to analyze the issue and formulate a position." *Id.* Applying due weight deference, this court will not "overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available." *Id.* at 286–87.

II. *Reasonableness of the Parties' Interpretations of* WIS. STAT. *§ 230.81(1)(a)*

¶ 34. As Bethards notes, the legislature has defined neither the term "supervisor" nor the phrase "the employee's supervisor" in WIS. STAT. § 230.81(1)(a). *See generally* WIS. STAT. §§ 230.03, 230.80. As the foregoing analysis demonstrates, the ERD has long interpreted "supervisor" to mean any person within an employee's

supervisory chain of command. Bethards does not dispute that Casey, as the DOJ's Human Resources Director, was not one of his "direct" supervisors. However, he argues that the human resources department, "as a conceptual matter, fulfills a supervisory role by virtue of the responsibilities and tasks typically assigned to such divisions," and that Casey was functioning as his "supervisor" for purposes of receiving his disclosure.

¶ 35. The distinction on which Bethards relies—implicitly acknowledging Casey was not within his supervisory chain of command while nonetheless asserting she was his "supervisor"—is, at least conceptually, consistent with the meaning of the term "supervisor" reflected in the administrative decisions. Although the administrative decisions cited above do not plainly illustrate what functions make someone a "supervisor" relative to a particular employee, we can draw certain conclusions based on the rule that a "supervisor" includes persons in a particular employee's supervisory chain of command. For example, we agree with the State's assertion that the ERD's interpretation reasonably means a "supervisor" is any person with "actual authority to take employment action or [to] effectively recommend such action."[14] *See* WIS.

---

[14] The ERD's interpretation, in this sense, comports with the common dictionary definition of the term "supervisor," which defines that term as "such a person having authority delegated by an employer to hire, transfer, suspend, recall, promote, assign, or discharge another employee or to recommend such action." *Supervisor,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unbar. 1993).

Any argument regarding potential confusion an employee might have regarding who is and is not a "supervisor" for purposes of WIS. STAT. § 230.81(1)(a), is not a basis for reversing the ERD in this case. Importantly, the statute expressly allows

STAT. § 230.83(1) (prohibiting an "appointing authority, agent of an appointing authority or supervisor" from engaging in retaliatory activities). This definition includes, but is not limited to, the employee's first-line supervisor, who typically holds direct responsibility for assigning the employee work, directing the manner by which that work is performed, reviewing the employee's performance, and rewarding or disciplining the employee. But Bethards does not argue Casey was this type of "supervisor." Rather, he relies on the general role a human resources department plays within any organization, and how its staff relates to and interacts with the employee population at large.

¶ 36. Bethards' allusions to the general functions of human resources departments are unavailing. Bethards relies on several dictionary definitions that he contends collectively demonstrate human resources departments are "responsible for overseeing" such activities as hiring, training and firing employees, as well as labor relations. Thus, Bethards submits, Casey's position alone as DOJ Human Resources Director qualifies her as a "supervisor."

¶ 37. We find this argument and its underlying rationale too abstract, and it is certainly not a more reasonable interpretation than the ERD's contrary conclusion. We decline to adopt a categorical rule of the type Bethards proposes. However, we also clarify that even under the ERD's interpretation of the term "su-

for an employee to request that the ERD identify the appropriate governmental unit to receive the information. *See* WIS. STAT. § 230.81(1)(b). Every governmental unit must identify an employee to receive such disclosures, and, if the employee complies with the ERD's advice and discloses only to the identified unit, he or she remains protected. *Id.* If an employee is not sure, the prudent course is simply to ask the ERD.

pervisor" and the phrase "an employee's supervisor," it could be that a particular employee has more than one "chain of command." Thus, we also decline to adopt the categorical rule—at least implicitly proposed by the State—that a human resources supervisor (or like supervisor) will never be within an employee's supervisory change of command, even when that employee works in a different department, bureau or division within an organizational structure.

¶ 38. The determination in any case of whether a particular recipient of a disclosure is an employee's "supervisor" under the ERD's interpretation of that term—i.e., an employee's immediate supervisor or someone within the employee's supervisory chain of command—is a mixed question of law and fact. The factual findings will determine both how the employee's supervisory authority is structured and, importantly, which individual or individuals have "actual authority to take employment action or effectively recommend such action," or otherwise have authority to direct an employee's job performance. *See supra* ¶ 35. It is only by ascertaining those facts that the legal question can be answered—whether a particular recipient of a disclosure qualifies as the disclosing employee's "supervisor."

¶ 39. Bethards' case falters on the factual end. The only evidence in the administrative record regarding the DOJ's human resources department functions consists of Cyganek's affidavit, which stated the department merely "provides operational support to the DOJ." While Cyganek's affidavit states that the department "manages personnel and training issues," there is no support for Bethards' claim that Casey was

effectively functioning as his supervisor.[15] In particular, there is no evidence that Casey could instruct Bethards in the performance of his job or that she could unilaterally terminate him, or even recommend his termination, based on Bethards' job performance.

¶ 40. Moreover, Bethards has failed to demonstrate that the more reasonable interpretation of Wis. Stat. § 230.81(1)(a) is the one the circuit court articulated here: that the head of an agency's human resources department is always included within the term "supervisor." There is nothing unreasonable about the ERD's interpretation of "supervisor" as encompassing only those individuals within the employee's supervisory chain (or chains) of command, however high they may go. Rather, Bethards argues the ERD's interpretation contravenes the policy underlying the Whistleblower Protection Law and the liberal construction we must afford to those statutes.

¶ 41. The legislature has declared it is Wisconsin's policy to "encourage disclosure of information" under the Whistleblower Protection Law and "to ensure that any employee employed by a governmental unit is protected from retaliatory action for disclosing

---

[15] Bethards urges this court to "disregard" Cyganek's and Matthews' affidavits as consisting of legal conclusions and "self-serving." *See Bilda v. Milwaukee Cty.*, 2006 WI App 159, ¶ 48, 295 Wis. 2d 673, 722 N.W.2d 116 ("Affidavits which contain assertions of 'ultimate fact' or conclusions of law must be disregarded."). Cyganek's and Matthews' affidavits discussed the DMS and DCI management structures, respectively, and did not contain improper legal conclusions. There is no indication the affiants were using the term "supervise" in the sense of the specific meaning of "supervisor" within Wis. Stat. § 230.81(1)(a). Again, these determinations go to the factual findings necessary to apply the legal standard.

information." Wɪs. Sᴛᴀᴛ. § 230.01(2). Although this declaration is the general policy, the legislature has not provided for employee protection in all instances. Rather, the disclosures must be "made in a particular way and regarding a subject matter covered in the statute [to] qualify for protection." *Hutson*, 263 Wis. 2d 612, ¶ 37. The ERD's reasonable interpretation of "supervisor" as including only those persons within an employee's supervisory chain of command is consistent with the public policy articulated by the legislature.

¶ 42. Bethards also argues the ERD's interpretation is inconsistent with the liberal construction that must be given to Wɪs. Sᴛᴀᴛ. § 230.81(1)(a).[16] However, the ERD's interpretation *is* a liberal interpretation, insofar as it expands the group of individuals who may receive a protected disclosure beyond the employee's first-line supervisor. In this respect, the ERD's interpretation is at least as reasonable as Bethards' even-more-liberal interpretation, which would seemingly make every state government employee's relevant human resources department a "supervisor" for purposes

----

[16] As an initial matter, it is not clear the statutes themselves dictate the liberal construction Bethards suggests. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 230.02 provides that statutes "applicable to *the division and bureau* shall be construed liberally in aid of the purposes declared in [Wɪs. Sᴛᴀᴛ. §] 230.01." (Emphasis added.) The "division" is the "division of personnel management in the department of administration," *see* Wɪs. Sᴛᴀᴛ. § 230.03(10), and the "bureau" is the "bureau of merit recruitment and selection in the division," *see* § 230.03(5). We note sections 230.02 and 230.03 were amended in 2015; prior to that, each statute referred to the "office of state employment relations," not the ERD. *See* Wɪs. Sᴛᴀᴛ. § 230.03(10w) (2013–14). In any event, it appears our supreme court has also assumed that § 230.02's rule of liberal construction reaches the Whistleblower Protection Law. *See DOJ v. DWD*, 2015 WI 114, ¶ 30 n.5, 365 Wis. 2d 694, 875 N.W.2d 545.

of the Whistleblower Protection Law.[17] Due weight deference requires that we affirm the agency decision under these circumstances. *See UFE Inc.*, 201 Wis. 2d at 286–87.

¶ 43. By the foregoing, we do not intend to suggest Bethards' position is wholly unattractive. Even the ALJ allowed that whistleblowers "would be better served if they also had the option of disclosing protected information to their Human Resources Director or Human Resources unit." Such a construction would address Bethards' contention that human resources

---

[17] Bethards attempts, but ultimately fails, to articulate a limiting principle against giving such expansive effect to his interpretation. He argues his interpretation of WIS. STAT. § 230.81(1)(a) "does not require the [c]ourt to issue a blanket decision that allows disclosure to any individual in any state entity's human resources department." Rather, Bethards argues the "facts of this case are unique in that Bethards had an ongoing relationship with Casey due to his medical leave, and his own frontline supervisor deemed it necessary to 'check in' with Casey regarding the formalities of Bethards' leave."

We cannot countenance Bethards' attempts to bootstrap Casey's involvement in his request for medical leave to his claim for whistleblower protection. These were two separate events, and although they may have shared the same factual underpinning (especially insofar as Bethards himself was concerned), there is no indication Casey was aware of Bethards' specific allegations prior to his December 19, 2012 email. Moreover, Bethards' argument regarding Casey's prior knowledge runs counter to our supreme court's directive that "disclosure" necessarily requires the recipient to have been previously unaware of the information at the time of the communication. *DOJ*, 365 Wis. 2d 694, ¶ 46 (citing *State v. Polashek*, 2002 WI 74, ¶ 23, 253 Wis. 2d 527, 646 N.W.2d 330). In any event, assisting Bethards with medical leave is not the same as bearing responsibility for his hiring, firing, or discipline—all activities Bethards proposes (and we agree) make one a "supervisor." Bethards' interpretation is certainly no more reasonable than the ERD's in this regard.

departments and officials are often the "first stop" for workers who have employment concerns. But this observation alone does not make the ERD's longstanding interpretation unreasonable, nor does it make Bethards' proposed interpretation the better rule. As Bethards concedes, the ERD's interpretation makes eminent sense when one considers that the "obvious policy behind [Wis. Stat. § 230.81(1)(a)] is to first alert those higher ups with an ability to remedy the problem" before making outside disclosures. The statute as currently written protects disclosures to "supervisors," which is a position the record fails to support that Casey occupied in relation to Bethards. If the legislature wishes to expand whistleblower protection to allow employees always to make disclosures to a human resources department or official (either singularly or in conjunction with a disclosure to someone in the employee's direct chain of command), it may adopt a specific definition of "supervisor" that permits this.

¶ 44. Bethards next argues the ALJ erred by not taking his allegation that Casey was his supervisor at face value for purposes of deciding the DOJ's motion to dismiss. Bethards' assertion in this regard rests upon his cobbling together various parts of his initial administrative complaint in ERD Case No. CR201300903 in an effort to create such an allegation. Nowhere in that complaint, however, did Bethards directly allege that Casey was his "supervisor," nor did he otherwise articulate his belief that Casey was acting as such for purposes of his disclosure.

¶ 45. More importantly, Bethards' argument regarding the weight to be given to any allegations he made in his administrative complaints is based on a

misperception of the relevant administrative procedure. In the judicial arena, factual allegations in the complaint are generally accepted as true for purposes of deciding a motion to dismiss. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 18, 356 Wis. 2d 665, 849 N.W.2d 693. The practice is slightly different before the ERD for purposes of addressing whistleblower complaints. A whistleblower complaint may be dismissed for failure to state a claim even after it has been certified to a hearing. *See* Wis. Admin. Code §§ DWD 224.06, 224.11 (Nov. 2006). "In determining whether to dismiss the complaint, the administrative law judge may consider documents and affidavits presented by any party and may hold a hearing to allow the parties to establish facts that may have a bearing on whether the complaint should be dismissed." Wis. Admin. Code § DWD 224.11 (Nov. 2006). Even if Bethards believed Casey was acting in a supervisory capacity, he did not submit any evidence to rebut the averments contained in the DOJ's affidavits. Bethards plainly knew of the rule permitting supplemental materials, as an affidavit from Bethards' attorney (addressing only the "timing" of the disclosures to Casey and Matthews) accompanied Bethards' response brief.

¶ 46. Finally, Bethards argues that even if he was required to make his disclosure to Matthews before Casey, the administrative record establishes he satisfied this requirement. Bethards contends Matthews received his disclosure at 12:10 p.m., whereas Casey received his disclosure at 12:38 p.m. This argument is not supported by the administrative record, which shows that Matthews and Casey *replied* so as to confirm receiving Bethards' email at those times.

Nothing in the record indicates when Matthews and Casey *received* Bethards' email. In any event, receipt of a disclosure is not the act upon which whistleblower protection depends. Rather, the statute focuses, understandably, on the employee's act of disclosure, which here was Bethards' sending of the email simultaneously to both recipients. *See* Wis. Stat. § 230.81(1).

¶ 47. In this regard, Bethards also challenges as absurd the ERD's interpretation of Wis. Stat. § 230.81(1) as prohibiting simultaneous disclosures to both supervisory and non-supervisory personnel. He argues that under the State's view, he "would have satisfied the statute had he deposited his disclosure in [the] U.S. Mail, knowing full well it would take several days to reach its recipient, and yet within minutes issued a press release to the media and the public at large." We typically do not address hypothetical questions, *see Estate of Schultz v. Schultz*, 194 Wis. 2d 799, 809–10, 535 N.W.2d 116 (Ct. App. 1995), and we merely observe that, to our knowledge, existing judicial or administrative case law has not yet imposed a "reasonableness" requirement on the timing of the disclosures to supervisors and non-supervisors.[18] Bethards' alleged "absurdity" is not a product of the ERD's interpretation in this case and is not implicated by the facts here. We therefore do not address it further.

*By the Court.*—Order reversed.

[18] *See DOJ*, 365 Wis. 2d 694, ¶ 57 n.11 (determining disclosed statements did not constitute "information" under the Whistleblower Protection Law, and therefore declining to decide whether the whistleblower complied with the procedural requirements of Wis. Stat. § 230.81(1) by emailing the statements to various DOJ employees simultaneously).