In re the Marriage of: McNeal Holmes Waters,
Petitioner-Respondent,

v.

Michael Allen Waters, Respondent-Appellant.

Court of Appeals

*No. 2006AP858. Submitted on briefs January 3, 2007.
—Decided February 13, 2007.*

2007 WI App 40

(Also reported in 730 N.W.2d 655.)

225

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Christopher D. Walther* of *Walther Law Offices, S.C.*, of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *McNeal Holmes Waters*, pro se.

Before Fine, Curley and Kessler, JJ.

¶ 1. CURLEY, J. Michael Allen Waters (Allen) appeals the post-judgment order that determined that his divorce judgment required him to pay a percentage of his wages as child support, not a specific dollar amount as he claimed. As a result, he was ordered to pay his former wife, McNeal Holmes Waters (McNeal), $8224.16 in past support, and $1500 toward her attorney's fees after the post-judgment court decided that his defense to McNeal's request was frivolous. He argues that the post-judgment court erred in interpreting the child support provisions found in the divorce judgment to require him to pay a floating 17% of his earnings as child support. Our review of the documents, the transcript of the divorce proceedings, and the

statutes supports Allen's contention. Consequently, we reverse and remand this matter for further proceedings consistent with this opinion.[2]

## I. Background.

¶ 2.  Allen and McNeal were married on January 18, 1999. One child, Quinn Michael Waters, was born during the marriage. McNeal filed for divorce on September 14, 2000. A temporary order was entered giving placement of the child, Quinn, to McNeal, and Allen was ordered to pay child support. Eventually the parties resolved all outstanding issues between them and signed a Final Stipulation-Marital Settlement Agreement (final stipulation). At the divorce hearing, the parties were questioned about the child support amount by both the attorneys and the court. The trial court accepted their final stipulation, along with several oral amendments, including one that permitted Allen to have a second job for a two-year period, the income from which would not be available for child support. The final stipulation consisted of a printed form with handwritten entries that were signed by the parties. The trial court incorporated the final stipulation and the oral amendments into the judgment and divorced them on February 19, 2002.

¶ 3.  The final stipulation makes mention of 17% percent of Allen's salary, but the actual child support order is for $400 per month. The judgment's findings of fact contain a provision that states "[c]hild support is based on 17% of the Respondent's gross income," but the conclusions of law contains the following

---

[2] As a result of our decision, Allen's legal defense was not frivolous and he is relieved from paying McNeal's attorney fees on this basis.

language: **"Child Support.** Commencing February 1, 2002, the Respondent shall pay to the Petitioner as child support the sum of $400.00 per month."

¶ 4. Within months after the divorce was granted, Allen brought a motion seeking to have McNeal found in contempt over problems he alleged he had with McNeal concerning communication about his son and placement. After a hearing in front of an assistant family court commissioner that purportedly resolved all matters between the parties, Allen filed another motion in September 2002 complaining of similar problems and seeking modification of Quinn's physical placement. A hearing was scheduled for November, but was rescheduled for February 22, 2005, at McNeal's request, and shortly before the hearing, McNeal filed a counter-motion. In an attached affidavit, she denied Allen's allegations concerning his placement problems and, pertinent to this appeal, she also asked for an increase in child support. When the parties were unable to resolve the issues touching on placement of their son, the trial court appointed a guardian *ad litem* for Quinn.[3]

¶ 5. The parties resolved all the issues raised by their motions except the one related to child support. The trial court ordered briefs on the remaining issue and subsequently rendered a written decision in which it determined that Allen "was unambiguously required to pay a dollar figure corresponding to seventeen percent (17%) of whatever his forty hour per week income was for two years following the divorce and then

---

[3] The trial court appointing the guardian *ad litem* was not the judge presiding over the divorce or the trial court who eventually rendered a decision on the disputed child support issue. Apparently rotation resulted in three different judges hearing this case.

228

McNeal could ask for seventeen percent (17%) of all his income thereafter." The trial court also ordered Allen to pay "the petitioner attorney's fees for the portion of these proceedings that pertain to the back child support because his so-called defense on this issue is frivolous." In the post-judgment order following the trial court's decision, $1500 is listed as the amount owed by Allen for McNeal's attorney's fees. This appeal follows.

## II. ANALYSIS.

¶ 6.   In reviewing legal issues, such as construction of a divorce judgment, appellate courts apply a *de novo* standard of review. *Sulzer v. Diedrich*, 2003 WI 90, ¶ 16, 263 Wis. 2d 496, 664 N.W.2d 641. We will do likewise. We construe divorce judgments at the time of their entry and in the same manner as other written instruments. *Jacobson v. Jacobson*, 177 Wis. 2d 539, 546–47, 502 N.W.2d 869 (Ct. App. 1993). We apply the rules of contract construction to a divorce judgment. *See Spencer v. Spencer*, 140 Wis. 2d 447, 450, 410 N.W.2d 629 (Ct. App. 1987). This is true even when the divorce judgment is based on the parties' stipulation. *See id.* at 451. In divorce actions, stipulations are in the nature of a contract. *Kastelic v. Kastelic*, 119 Wis. 2d 280, 287, 350 N.W.2d 714 (Ct. App. 1984). Terms used in contracts are to be given their plain or ordinary meaning, and it is appropriate to use the meaning set forth in a recognized dictionary. *See Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 745, 456 N.W.2d 570 (1990).

¶ 7.   Allen argues that the trial court erred in its interpretation of the final stipulation, the findings of fact and the conclusions of law contained in the divorce judgment because:   (1) the language found in the legal

documents is not ambiguous; (2) if the documents are ambiguous, they should be construed against the drafter, McNeal's lawyer; (3) the statements of the trial court at the time of the divorce support his interpretation; (4) the trial court's ruling violated WIS. STAT. § 767.25(1) (2001–02),[4] effective at the time of the divorce, which prohibits the imposition of a percentage order and requires that the order be for a fixed sum; and (5) the trial court's ruling violated WIS. STAT. § 767.32(1m), which prohibits a revision of a child support order prior to the date on which notice of the action is given to the respondent.

¶ 8.   "Ambiguity exists where the language of the written instrument is subject to two or more reasonable interpretations, either on its face or as applied to the extrinsic facts to which it refers." *Schultz v. Schultz*, 194 Wis. 2d 799, 805–06, 535 N.W.2d 116 (Ct. App. 1995). Determining whether an ambiguity exists is a question of law. *Id.* at 805. The court will consider the whole record in construing a divorce judgment where the judgment is ambiguous. *Jacobson*, 177 Wis. 2d at 547.

¶ 9.   We first look at the final stipulation:

---

[4] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 10.   As can be seen, the document has a "fill in the blank" format and several different options for child support. The one used by the parties was a monthly dollar amount with "400" written in after the symbol "$." The phrase "(17% of current income $28,000/year)" then follows on the same line. The two unused printed provisions both refer to percentage orders. While there is mention of a percentage, it is listed only to show how the $400 was calculated. Had a percentage order been intended, one of the other provisions would have been utilized. Nowhere in the agreement is there any language that states Allen is under an order that automatically makes him responsible for paying an amount over the $400 per month if his income should increase. Consequently, the final stipulation does not support McNeal's allegation that the parties agreed that child support was a floating percentage order.

¶ 11.   We next look at the language dealing with child support found in the findings of fact and conclusions of law. The findings of fact states:

A.   Child support is based on 17% of the Respondent's gross income. At the time the divorce is granted, the Respondent's gross annual income is $28,560.00 based on a six month contract through the University of Wisconsin – Milwaukee in the amount of $14,280.00. Seventeen percent (17%) of $28,560.00 equals $404.00 per month. Accordingly, current child support shall be set at $400.00 per month.

B.   For a period of two years following the granting of divorce, child support *shall be based* on seventeen percent (17%) of Respondent's gross income from full-time employment (40 hours per week). During this period of time, the Respondent is not required to pay child support on income that he earns from a

231

second job. After the expiration of two years, the *Petitioner has the right to ask the Court to review child support based on the Respondent's total gross income from all sources.*

(Emphasis added.) These provisions indicate that "child support is based on 17%" of Allen's income; it does not say, as the trial court concluded, that child support *is* a floating 17% of Allen's wages. In the next paragraph, the phrase "For a period of two years following the granting of divorce, child support shall be based on seventeen percent (17%)" of Allen's income. The order is based on 17% of Allen's full-time wages. Had Allen been ordered to pay 17% of his income, one would expect the document to read differently. Finally, the conclusions of law section references child support and simply states: "**Child Support.** Commencing February 1, 2002, the Respondent shall pay to the Petitioner as child support $400.00 per month." Again, had the parties agreed to a floating 17% order above the $400, an explanation would have been set forth.

¶ 12.  Although there is some suggestion in the findings of fact that the child support order was a percentage order, the final stipulation and conclusions of law make clear that the dollar amount *is based on* a percentage of Allen's wages. If Allen was expected to pay additional money representing 17% of his income above the $400 ordered, we would expect language in either the final stipulation or the divorce judgment that would spell out how and when that would be accomplished. There is none. Consequently, we conclude that no floating percentage order was intended.

¶ 13.  Moreover, extrinsic evidence supports our conclusion. At the divorce proceeding, the following colloquy occurred:

Q. [McNEAL'S ATTORNEY]: But for future years, in terms of verifying child support, you're going to be providing her with a copy of your state and federal income tax returns for the year 2002 until your child support obligation ends. That's part of our agreement today.

A. [ALLEN]: I'd like to ask my lawyer a question. I don't understand.

[ALLEN'S ATTORNEY]: You're providing her with a statement of what your income is, so if you have a different job, they will know what your income is.

THE COURT: Typically the Court will have on a reciprocal basis – both parties have an obligation to support the child – so what I typically do is take your W-2, share it with her, she shares hers with you. *So, if somebody seeks an adjustment,* if yours should go down or upwards, we can adjust accordingly . . . .

(Emphasis added.) Clearly, the trial court's explanation for the exchange of tax information can only mean that the trial court believed this to be a child support order setting a specific dollar amount, and if anyone wished it changed, they were required to "seek an adjustment" by petitioning the court. The order did not automatically increase (or decrease) the child support award.

¶ 14. We also note that McNeal's affidavit supports this construction as it contains the following language: "Upon information and belief, the respondent's income has increased substantially. I am requesting an increase of child support as a result of the increased income. Also, I am requesting a contribution toward Quinn's day care expenses." Her affidavit is asking for an increase. Had McNeal believed she was entitled to, pursuant to the divorce judgment, 17% of Allen's wages, she would not have asked for an increase.

233

Rather, she would have asked for an accounting to determine how much money was owed her.

¶ 15.   Finally, unlike the trial court's determination, our conclusion does not violate the mandate of the then-existing WIS. STAT. § 767.10(2)(am). At the time of the divorce, WIS. STAT. § 767.25(1)(a) required that the "support amount must be expressed as a fixed sum unless the parties have stipulated to expressing the amount as a percentage of the payer's income and the requirements under s. 767.10(2)(am) 1. to 3. are satisfied." Section 767.10(2)(am)1. to 3. stated:

> (am) A court may not approve a stipulation for expressing child support or family support as a percentage of the payer's income unless all of the following apply:
>
> 1. The state is not a real party in interest in the action under any of the circumstances specified in s. 767.075 (1).
>
> 2. The payer is not subject to any other order, in any other action, for the payment of child or family support or maintenance.
>
> 3. All payment obligations included in the order, other than the annual receiving and disbursing fee under s. 767.29 (1) (d), are expressed as a percentage of the payer's income.

A reading of the final stipulation reveals the third exception was not met. Thus, the trial court's determination that the stipulation required Allen to pay a floating 17% of his wages does not comport with the statute.

¶ 16.   In sum, after a review of the pertinent documents, the transcripts, and the relevant statutes, we conclude that the documents created no ambiguity

and are essentially consistent. The child support was set at $400, based on Allen's wages. It was not a floating order for 17%. Further, the trial court at the time of the divorce assumed the parties were setting support at $400 a month, and any change required court action. Indeed, even McNeal's affidavit supports our conclusion. Finally, our conclusion complies with the statute's ban on percentage orders except under circumstances not met here. Because we conclude that the trial court erroneously determined that Allen was to pay a floating 17%, we do not reach Allen's final argument pertaining to Wis. Stat. § 767.32(1m). For these reasons, we reverse and remand this matter back to the trial court to enter findings consistent with our decision. If the circumstances warrant an increase in child support, McNeal is entitled to an increase from the date the notice of the action was given to Allen. Accordingly, we reverse and remand to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.