PER CURIAM.
¶1 William Holm challenges the division of property and maintenance award following his divorce from Dawn Holm. William argues that although the circuit court claimed in the judgment to be dividing the property equally, in fact it divided the property unequally. Regarding the maintenance award, William contends the court intended to provide him the vast majority of the income and divide it 75/25 in William's favor, but it did not order that result. According to William, only a denial of maintenance would have resulted in the income actually being divided 75/25 as the court intended. We affirm the property division and maintenance award but remand with instructions to correct an ambiguity in the judgment so that it conforms to the court's oral ruling.
BACKGROUND
¶2 William and Dawn were married on December 5, 2004, and divorced effective August 22, 2016. The parties had three minor children, and the circuit court awarded joint legal custody with physical placement allocated as set forth in a partial marital settlement agreement that was incorporated by reference in the divorce judgment. William was fifty years old at the time of the divorce and employed as an anesthesiologist earning $695,375 annually. Dawn was forty-six years old and a homemaker during the marriage. Prior to the marriage, Dawn worked as a licensed practical nurse. The court found her earning capacity to be $45,000 annually.
¶3 The circuit court conducted a trial on the issues of property division, maintenance, and child support. In its oral ruling, the court initially stated, "Folks, you make a lot of money here. There is a lot of living outside your means, too." The court further noted there was "a lot of debt to have to divide up. Thankfully, there is income coming in that can address that debt." The court also took William's failure to pay substantial debts during the pendency of the divorce proceedings into consideration in making the property division. However, the court stated the issues before it were interrelated. The court stated that it was "trying to work this out equitably in other ways and you'll see by the end of this order that I have considered each of these different payments and considered them in fashioning not just the property division but also the issue of maintenance and the issue of child support altogether." The court then stated with regard to the property division:
The way I'm dividing the property up is that a lion's share of the debt goes to [William]. I think that the way this has been divided up in many ways equalizes out the amount of debt versus the amount of income that he has to the point where I think it does, in fact, equalize out the property division.
....
The Court is satisfied that the property division, though it might be not 100 percent equalized, it is a very close equalization between the parties ....
¶4 The circuit court further stated it was "not going to order ... an equalization payment, and the numbers that I've run are as close to an equalization as I wish to do given the additional orders that I'm going to make." The court then proceeded to award maintenance to Dawn from William in the amount of $12,000 monthly for four years' duration. The court stated, "I think that's an appropriate length of time given the length of the marriage ... and less time than was requested." The court reasoned, "I can't see a reason why [Dawn] can't become more self-supportive after four years."
¶5 The circuit court then also stated it "deviated south" from the statutory child support amount. The court reasoned:
This Court, however, feels that given the property division and the support of the maintenance that's been ordered, that I will under [ WIS. STAT. §] 767.511(1n) [ (2017-18)[1] ] with a slight deviation downward, that the percentage given the other payment and given the property division, I find that the percentage should be an order. I'm going to order $6,000.00 a month in child support. ... [S]o I'm doing that deviation from the standard downwards ....
Written "Findings of Facts, Conclusions of Law, and Judgment of Divorce" were subsequently entered. William now appeals the property division and maintenance award.[2]
DISCUSSION
¶6 The division of property and the awarding of maintenance rest within the sound discretion of the circuit court. LeMere v. LeMere , 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. We will sustain a discretionary decision if the circuit court examined the relevant facts, applied a proper standard of law, and reached a conclusion that a reasonable judge could reach using a demonstrated rational process. Liddle v. Liddle , 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987). Findings of fact will be affirmed unless clearly erroneous. WIS. STAT. § 805.17(2). We search the record for reasons to sustain the court's discretionary decisions. Steiner v. Steiner , 2004 WI App 169, ¶18, 276 Wis. 2d 290, 687 N.W.2d 740.
I. Property division
¶7 William argues the circuit court erroneously exercised its discretion by concluding an equal property division was appropriate but, in fact, awarding an unequal property division in Dawn's favor. According to William, the court "awarded net property division to William worth [a] negative $112,233.62; [and] to Dawn, [a] positive $135,412.42." Thus, William contends that Dawn "received $123.823.02 more than she would have under an equal property division and nearly $250,000.00 more than William received."
¶8 We acknowledge the circuit court's written judgment of divorce specifically refers to "The Court's equal division of property." When viewed in isolation, the court's itemization of debts and assets in the property division it approved appears to award a negative property balance for William and a positive balance for Dawn. However, the court's oral ruling was attached to the written judgment, and the transcript of the oral ruling sets forth other findings of the court incorporated into the written judgment that support the court's property division.
¶9 Our review of the oral ruling transcript confirms that the circuit court did not consider property division in isolation The court stated that it considered its property division accounting to be "as close to an equalization as I wish to do given the additional orders that I'm going to make." The court then considered the amount and duration of the maintenance payments, the child support payments, and other factors the court determined to be relevant to this case, including William's failure to make payments on debt during the divorce proceedings.
¶10 Pursuant to a temporary order, William had been required to pay Dawn $8,608 monthly in child support. William was also ordered to pay the mortgage securing the marital residence. The court commissioner amended the temporary order following a supplemental temporary hearing, and William was required to pay monthly child support of $10,045, retroactively. In determining this payment, the commissioner specifically took into consideration that, during the pendency of the divorce, William would be paying $9,777 monthly toward the mortgage payment, $2,275 monthly toward a boat loan, and $972 monthly toward his retirement/investment account, among other items.
¶11 William then sought a de novo hearing. At that hearing, Dawn argued the circuit court should reassess the monthly support obligation because William was not making the mortgage payments. The court addressed the issue and stated "that will have to be worked out in the divorce itself." At a subsequent motion hearing, the court reiterated its de novo ruling:
I thought I made it clear there was going to be an ongoing responsibility to pay these sort of things. I thought I made that quite clear when I took into account the temporary order. I didn't relieve anybody of a responsibility to pay certain things just because I did a temporary order at that given time. It wasn't a one shot deal. It required people to make certain payments and those payments I assume were going to be paid and in the end we were going to hash out at a final hearing what was the equity between the parties as to what had not been paid up to that point. That was the intent of the Court.
¶12 During arguments on property division at the final divorce hearing, Dawn argued that the circuit court should take into consideration the required payments William failed to make during the divorce action, including unpaid mortgage payments and boat payments. The ordered payments, if made, would have reduced debt on the boat and mortgage. In attempting to equalize the property division, the court made it clear in its oral ruling that it was taking into consideration the fact that William failed to make mortgage payments and boat payments, which over the course of the divorce proceedings amounted to $287,583. The court expressed difficulty in assessing increases in equity had the payments been made, but the record reflects the court attempted to equalize the property division as best it could in an equitable manner. Regarding unpaid mortgage payments, boat payments and life insurance payments, the court stated:
The concern I have is that for these payments not made, there's not really a dollar-for-dollar type of way to assess any increase in equity. You know, had there been these payments made, there might have been more equity at some point to be able to split. I don't believe there has been enough evidence proving what that amount would be. I mean, there could be some equity, some not, but it's not dollar for dollar. You know, I have great concerns if he had paid, for example, the more payments on it, that is money that would have gone possibly towards more support during that time, but I'm working that out in other ways. There is consideration being given in other ways ....
....
I'm trying to work this out equitably in other ways and you'll see by the end of this order that I have considered each of these different payments and considered them in fashioning not just the property division but also the issue of maintenance and the issue of child support altogether. These are not separate islands here. These are all interrelated ....
¶13 When the oral ruling was reduced to the written Findings of Fact, Conclusions of Law, and Judgment of Divorce, no mention was made of the consideration the circuit court gave to William's unpaid, court-ordered obligations. Yet, it is clear the court did not intend to relieve William of the obligation for the debt payments, half of which would be approximately $143,500. The court partially articulated its reasoning in its oral decision when it awarded $100,000 of William's 401k to Dawn, given the court's consideration of William's failure to pay debt on the house and boat:
I am considering the contribution to a retirement in the amount of $100,000.00 to [Dawn] as part of that consideration for some of the lost payments, some of the lost equity. I think it's important that [Dawn] have some type of retirement when this is all over with. So that is part of the consideration that I feel is equitably appropriate in dividing up the assets themselves.
¶14 Significantly, had the circuit court not "hash[ed] out at a final hearing what was the equity between the parties as to what had not been paid up to that point," William's failure to follow the temporary orders would have been unfair and prejudicial to Dawn. Had the court not reserved consideration of William's failure to make the court-ordered payments until it considered the property division at the time of the final divorce hearing, Dawn may have been entitled to increased temporary maintenance, or a large lump sum representing temporary maintenance that should have been paid during the pendency of the divorce.
¶15 William also argues the circuit court's oral ruling was devoid of any analysis of the statutory property division factors under WIS. STAT. § 767.61(3). However, William does not point to any statutory factor the court failed to consider or properly analyze in arriving at its conclusion. Indeed, the court specifically referenced all the statutory factors, and our review of the record reflects the court's consideration of appropriate statutory factors, exemplifying the flexibility a court has in crafting a fair and equitable remedy. See Lacey v. Lacey , 45 Wis. 2d 378, 382, 173 N.W.2d 142 (1970). Perhaps most importantly, the court stated: "I've made a division of property that takes into account the relative incomes of each of the parties as well as the assets and debts that need to be paid, the educational level of each party and the earning capacity of [William], his earning capacity is pretty clear." We conclude the court properly exercised its discretion in determining the property division by following a reasoned mental process and applying the applicable law to the facts of this case.
II. Spousal maintenance
¶16 William claims the circuit court merely performed a "partial maintenance analysis" and "left unanswered the touchstone question for maintenance determinations: Why is $12,000.00 per month a proper maintenance award ...?" He also contends that "Dawn's childcare obligations under an equal placement schedule do not justify her refusal to prepare to work." William asserts what is ultimately dispositive is "the complete lack of incentive for Dawn to diligently pursue income because of the excessive maintenance award." He argues the court "said it was providing William the vast majority of the income and dividing it 75/25 in William's favor, but it did not." According to William, "only a denial of maintenance would have resulted in the income actually being divided 75/25, as the circuit court stated was its intent."
¶17 We disagree with William's contention that the circuit court merely paid lip service to the statutory maintenance factors. The court appropriately balanced various factors in its maintenance award. These factors are designed to further the distinct but related objectives to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective), and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective). See LaRocque v. LaRocque , 139 Wis. 2d 23, 32-33, 406 N.W.2d 736 (1987). Here, the court specifically mentioned the length of the marriage. See WIS. STAT. § 767.56(1c)(a). The court also took into account the property division in making its maintenance determination, a proper analysis under WIS. STAT. §§ 767.56(1c)(c) and 767.61(3)(i). The court placed significant emphasis on the feasibility of Dawn becoming self-supporting within four years, notwithstanding her length of absence from the job market, a proper statutory factor under § 767.56(1c)(f). The duration of the award was also limited in order to give credence to the support and fairness objectives, which are clearly inferred in the oral ruling.
¶18 The circuit court specifically discussed other proper statutory factors in its oral ruling. This case presented huge differences in income and earning capacity. Given the court's order, Dawn's standard of living after four years would be markedly decreased, regardless of the further education and employment she might pursue as a licensed practical nurse. See WIS. STAT. § 767.56(1c)(e). Quite simply, Dawn could not pay down the debt and as a result, she was allocated very little debt in property division. While Dawn was provided a good standard of living for four years by the circuit court, thereafter she would have a much reduced standard of living and virtually no assets despite her earning capacity. After divorce, William will have a substantial earning capacity, standard of living, and the likelihood to recoup his assets thereafter. And there was no finding that William would have to invade his property division to pay maintenance; it was up to him to decide how to fund his obligations. The court appropriately determined the maintenance award was fair and equitable considering the property division and child support. The court appropriately balanced all the various factors of this case, and the court's decision was reasonable.
¶19 There is also no merit to William's contention that the circuit court's order provided a "complete lack of incentive for Dawn to diligently pursue income because of the excessive maintenance award." Although William argues the maintenance award discourages Dawn from finding work, the court-ordered four-year term was half of the requested eight-year duration. The court believed that after four years, Dawn could get on her feet. The court specifically imputed income to her of $45,000 annually, despite the fact that she had not worked outside the home for twelve years and needed additional education to reinstate her nursing license.
¶20 William points to paragraph 18e in the written judgment, which stated as follows:
e. Consistent with the division of income resulting from the child support and maintenance awards ordered by the Court, namely, 75% to William Holm and 25% to Dawn Holm, William Holm shall be responsible for 75% of the minor children's health care insurance and uninsured health care expenses (health, dental, orthodontist, counseling, etc.) and Dawn Holm shall be responsible for 25% of the minor children's health care insurance and uninsured health care expenses (health, dental, orthodontist, counseling, etc.).
William argues that "the circuit court stated [in its oral ruling] it was dividing net income 75% to William and 25% to Dawn" and it "confirmed that division in the [written] Judgment." This argument is disingenuous.
¶21 At no time in its oral ruling did the circuit court claim to be making a maintenance award using percentage of income. At the final divorce hearing, William asked the court to award $6,146 in child support and no maintenance. Based upon a purported income of $575,000 to William and an earning capacity of $46,392 to Dawn, William's proposed division of income was 70.53% to William and 29.47% to Dawn. Dawn asked the court to award a 50/50 income equalization split when addressing maintenance, and she asked the court to set William's income at $695,375, with an imputed income to her of $40,000. Based upon a 50/50 split, Dawn requested a child support award of $7,541 and monthly maintenance of $13,117.
¶22 The circuit court was well aware of Dawn's 50/50 family support request when it ordered a deviation. The court agreed with Dawn on the income attributable to William of $695,375. However, it imputed income to her of $45,000. The court then ordered a downward deviation from her request for maintenance when it ordered $12,000 monthly for four years. As the court stated, "That sort of follows a little less than what's part of Exhibit 36 and less time than was requested." The court also deviated downward for child support when it awarded $6,000 monthly. At no time did the court use percentages. In fact, that result would have been less than the percentage William was seeking and a lot less than Dawn was requesting.
¶23 After the circuit court made its oral ruling on property division, maintenance, child support, and variable expenses, it asked, "What else do I need to address?" A subsequent discussion ensued regarding medical insurance premiums and uninsured health costs. For the first time, a 75/25 percentage was suggested, and it was only regarding the health insurance premiums and uninsured health care costs. The court did not claim to be making the 75/25 decision based upon any specific numbers of net income division.
¶24 William's attorney then asked the circuit court, "Is that consistent with the division of income that you ordered?" The court responded, "I think that is, yes." However, at no time did the court state it was "dividing the net income 75% to William and 25% to Dawn," for maintenance purposes, as William now argues. Significantly, concerning the 75/25 division for health insurance premiums and uninsured health care costs, the court said: "I would have liked to have thought through this a little more." In any event, there was no further discussion that the court was attempting to mirror its support and maintenance orders with what it did regarding health insurance premiums and uninsured costs with net income percentages.
¶25 William's attorney then drafted the written Findings of Fact, Conclusions of Law, and Judgment of Divorce containing the superfluous qualifier in paragraph 18e concerning the 75/25 split "[c]onsistent with the division of income resulting from the child support and maintenance awards ordered by the Court ...." William now argues this language results in a 75/25 split in net income, and that "only a denial of maintenance would have resulted in the income actually being divided 75/25, as the circuit court stated was its intent." However, the written judgment clearly states three subparagraphs later, "William Holm shall pay maintenance to Dawn Holm in the amount of $12,000 per month via income withholding, for a period of four years." This created an internal inconsistency in the written judgment. See Schultz v. Schultz , 194 Wis. 2d 799, 805-06, 535 N.W.2d 116 (Ct. App. 1995).
¶26 We will consider the whole record in construing a divorce judgment where the judgment is ambiguous. Waters v. Waters , 2007 WI App 40, ¶8, 300 Wis. 2d 224, 730 N.W.2d 655. Here, the record confirms the circuit court's intent was straightforward: a maintenance award of $12,000 monthly and a monthly child support award of $6,000. The court also ordered the children's medical insurance premiums and uninsured expenses 75% to William and 25% to Dawn. Accordingly, although we affirm the maintenance award, the cause is remanded with directions to clarify the written judgment so that it conforms to the court's oral ruling with regard to the medical insurance and uninsured expense provision.
By the Court. -Judgment affirmed and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

References to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

We note that William's brief to this court contains a fact section that freely mixes purported facts with argument. Much of the purported facts and argument pertains to an attempt to present Dawn to this court in an unfavorable manner. However, the circuit court made no findings of misconduct or credibility determinations regarding the parties' spending habits other than noting the parties lived beyond their means. Emotionally charged "facts" mixed with argument are not helpful to this court, and counsel is admonished that an appellant's brief shall contain only facts relevant to the issues presented for review, with appropriate references to the record. See Wis. Stat. Rule 809.19(1)(d).